DAISY CUADRADO CARRIÓN y OTROS, demandantes y peticionarios, *v.* CARLOS ROMERO BARCELÓ y OTROS, demandados y recurridos.

*Número:* CE-85-823 *Resuelto:* 16 de febrero de 1988

*Pedro I. Torres Amador*, de *Cancio, Nadal & Rivera*, abogado de los peticionarios; *Rafael Ortiz Carrión, Procurador General, Doris Quiñones Tridas, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Por tratarse de un asunto que reviste valor normativo, expedimos auto de *certiorari* para revisar la resolución del Tribunal Superior, Sala de San Juan, que declaró no ha lugar una solicitud de los peticionarios para que se certificara la acción allí pendiente como un pleito de clase. Una vez confrontado el derecho que pasamos a reseñar con la resolución emitida por el Honorable Tribunal Superior, confirmamos. Resolvemos que aunque la existencia de una práctica de discrimen puede ser una cuestión común a los integrantes de una clase, según los hechos de este caso, no se justifica la certificación.

## I

Los peticionarios son maestros de instrucción pública que instaron demanda contra el entonces Gobernador, Lcdo. Carlos Romero Barceló, y varios funcionarios del Departamento de Instrucción Pública, en solicitud de sentencia declaratoria, interdicto y daños y perjuicios. Alegaron que habían sido objeto de discrimen por razones políticas, ya que no habían obtenido nombramientos con carácter permanente o probatorio según ordena la Sec. 1 de la Ley Núm. 312 de 15 de mayo de 1938 (18 L.P.R.A. sec. 214),(1) por la *única* razón de no ser miembros del Partido Nuevo Progresista.

Los demandantes, aquí peticionarios, originalmente Daisy Cuadrado Carrión y otros 16 miembros del magisterio, designaron su acción como pleito de clase y alegaron representar a maestros en todos los distritos escolares de Puerto Rico "que reúnen los requisitos necesarios para ser nombrados ... en calidad de personal probatorio y/o perma-

---

(1) *"Maestros permanentes—Requisitos*

"Todo maestro en servicio activo en las escuelas públicas, mediante nombramiento hecho de conformidad con la Ley Escolar, los reglamentos del Departamento de Instrucción Pública y los reglamentos de la Junta Estatal de Instrucción Vocacional y Técnica, y que haya ejercido como tal en cualquier categoría de escuela durante el período probatorio que se especifica más adelante, tendrá derecho a ser contratado con carácter permanente en la categoría correspondiente en que esté ejerciendo al expirar dicho período probatorio, sin otras pruebas de calificación o capacidad profesional que la posesión de una licencia regular de la misma categoría del puesto que ocupa el maestro y haber realizado, a juicio del Departamento de Instrucción Pública, labor satisfactoria. Para los efectos de las secs. 214 a 218 de este título, no se tomará en consideración el tiempo que los maestros ejerzan en calidad de provisionales. Tales maestros tendrán derecho a ser contratados con carácter permanente en el municipio en que están ejerciendo al expirar el período probatorio. El tiempo trabajado por los maestros con certificado regular en calidad de sustituto y que hayan realizado labor satisfactoria en puestos de la misma categoría se convalidará como período probatorio. La equivalencia de los dos (2) años de período probatorio comprenderá el trabajo realizado con contrato sustituto o probatorio durante dos (2) años consecutivos. Tales maestros tendrán derecho a ser contratados con carácter probatorio o permanente en el municipio donde estén trabajando cuando les corresponda una plaza en propiedad." 18 L.P.R.A. sec. 214.

nente". Anejo D, pág. 5. Posteriormente, mediante oportuna solicitud, el tribunal permitió la intervención de más de 30 maestros que alegaban idéntica preterición por razones políticas.

Luego de prolongados incidentes relacionados con el descubrimiento de prueba, prórrogas, avisos de desistimiento y sentencias parciales, el tribunal de instancia, previa vista, rehusó certificar la clase y adujo que era necesario evaluar el caso de cada maestro individualmente para luego determinar si no había obtenido la plaza por discrimen político o por falta de requisitos, necesidades del servicio u otras causas legítimas. En estas circunstancias, el tribunal opinó que era "imposible asumir" que los demás maestros se encontraban en situación parecida. También resolvió que los demandantes, aquí peticionarios, no podían representar adecuadamente a la clase e incluso intimó que podían existir intereses encontrados entre sus miembros, ya que una adjudicación a favor de los demandantes, aquí peticionarios, afectaba negativamente las posibilidades de que otros maestros en la misma situación pudieran obtener una plaza permanente o probatoria.

A la petición de *certiorari* de los demandantes peticionarios expedimos el auto el 16 de enero de 1986 y el caso quedó sometido el 21 de mayo del mismo año.

La labor decisoria en el presente caso es de naturaleza compleja. Para el mejor orden de la exposición dividimos la opinión en tres áreas principales: (1) antecedentes históricos del pleito de clase; (2) análisis de la Regla 20 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y (3) aplicación de estos principios a la situación procesal pendiente.

## II

Para trazar los perfiles históricos del pleito de clase tenemos que remontarnos al primitivo derecho procesal anglo-

sajón, de formación consuetudinaria. En su coyuntura histórica, esta forma de litigación colectiva surgió como un intento de depurar al proceso de los elementos formalistas que impedían que una parte *actuara en interés de otra*.(²) Mientras el derecho común inglés sólo exigía la acumulación procesal de las personas cuyos derechos pudieran verse afectados de forma directa e inmediata, los tribunales de equidad elaboraron una norma de rigurosa acumulación con el propósito de evitar la multiplicidad de pleitos. Toda persona que tuviese algún interés común en el asunto objeto de litigio tenía que ser reclutada como parte; la ausencia de cualquiera de ellas era motivo para desestimar. H.B. Newberg, *Newberg on Class Actions*, 2da ed. rev., Colorado, Shepard's/McGraw Hill Book Co., 1985, T. 1, pág. 16; S.C.

---

(²) La figura ha atravesado por concepciones doctrinales y métodos diferentes, aunque sin perder el elemento técnico permanente de "litigio por representación". La comprensión histórica es esencial, ya que las características fundamentales de cada etapa formativa han perdurado de una u otra forma en las modernas codificaciones. Las monografías consagradas a aspectos concretos del tema tienen frecuentemente una parte histórica que, aunque centrada sobre el problema estudiado, resultan de interés. El estudio más completo sobre la cuestión está en Nota, *Developments in the Law, Class Actions*, 89 Harv. L. Rev. 1318 (1976). En un principio, la estructura del litigio estaba determinada por la naturaleza de la causa de acción muy al margen del análisis empírico y funcional que caracteriza al moderno derecho procesal. Bajo esta concepción inicial la más estrecha "comunidad de intereses" constituía un prerrequisito fundamental del pleito. Cada miembro de la clase debía tener idéntico título o interés jurídico en el objeto del litigio. A esta concepción legalista del pleito de clase dio paso la teoría del "consentimiento". La estructura del litigio ya no viene predeterminada por el origen de la causa de acción, sino por la existencia de cuestiones de hechos — actos, omisiones o eventos— comunes. A través del mecanismo técnico-jurídico de la notificación cada miembro ahora decide, con su anuencia, si la acción de clase es un medio superior a los alternos para ver adjudicados sus derechos. En las etapas más cercanas cobró forma una teoría *sustantiva* del pleito de clase. En esta última fase evolutiva se le atribuyen diversas misiones al pleito de clase, pero principalmente se concibe como un mecanismo destinado a poner en vigor la política pública del Estado. La acción de clase se concibe como un recurso adecuado si la filosofía procesal-representativa del pleito de clase resulta compatible con la estructura y política remedial de la ley que crea la causa de acción, o contribuye a realizar sus objetivos.

Yeasell, *Group Litigation and Social Context; Toward a History of the Class Action*, 77 Colum. L. Rev. 866 (1977); Nota, *Developments in the Law, Class Actions*, 89 Harv. L. Rev. 1318 (1976); A. Chayes, *Foreword: Public Law Litigation and Burger Court;* 96 Harv. L. Rev. 4 (1982).

Esta exigencia, al servicio exclusivo de la economía procesal, resultó ser con el tiempo injusta. En el siglo XVIII el denominado *Court of Chancery* inglés recurrió al concepto de "clase representativa", teorema jurídico que permitía que grandes grupos de individuos ligados por algún vínculo o interés pudieran demandar o ser demandados en acciones donde el número de interesados era tan grande que su acumulación como parte era impracticable. Newberg, *op. cit.*, T. 1, págs. 16–17, 135–136.

En Estados Unidos, al igual que en Inglaterra, los pleitos de clase surgieron como medida de excepción ante la norma de acumulación compulsoria que imperaba en los tribunales de equidad. Fue adoptada jurisprudencialmente y luego codificada en el *Federal Equity Rule 48* de 1842, en el *New York Code* de 1848 y en el *Federal Equity Rule 38* de 1912. No fue realmente hasta la promulgación de la Regla 23 en su versión original y las primeras Reglas Federales de Procedimiento Civil en 1938, que esta norma, fundamentalmente en "equidad", adquiere categoría estatutaria. Superadas con la enmienda de 1966 las tres clasificaciones originales de "verdadera", "híbrida" y "espuria" —que fueran ampliamente criticadas— hoy nadie cuestiona la utilidad del pleito de clase particularmente ante el aumento considerable de casos que involucran al Gobierno, uniones obreras, negocios, asociaciones sin fines de lucro, derechos civiles, grupos ambientalistas y consumidores.

La figura jurídica nos llegó por influencia del Derecho norteamericano. Antes del 1943, el Código de Enjuiciamiento Civil de Puerto Rico aludía de forma rudimentaria a

la acción de clase en su Art. 66 (32 L.P.R.A. anterior sec. 316).(³) Luego adoptamos textualmente la Regla 23 de Procedimiento Civil federal de 1938 cuando aprobamos las Reglas de Enjuiciamiento Civil de 1943, y de ahí pasó a ser la Regla 20 de Procedimiento Civil de 1958. En la actualidad, todo este acervo histórico y normativo ha cristalizado en la Regla 20 de Procedimiento Civil, *supra*; al adoptar nuestro ordenamiento procesal de 1979, incorporamos la versión moderna de la Regla 23 federal.

El comentario oficial que la complementa muestra claramente los propósitos que la animan.(⁴) A medida que las sociedades crecen y se vuelven más complejas, como resulta con el Puerto Rico de hoy, cobra mayor sentido la utilización de este procedimiento que permite la representación de un nutrido grupo de personas con reclamaciones típicas fun-

---

(³) Esta disposición, que proviene a su vez del Código de Enjuiciamiento Civil de California, Art. 382, y del Código de Enjuiciamiento Civil de Idaho, Art. 3170, disponía:

"Los partícipes en una acción que estuvieren unidos por interés común deberán asociarse como demandantes o demandados; pero si no pudiera obtenerse el consentimento de alguno que debió haberse asociado como demandante, podrá éste ser demandado, consignándose el motivo en la demanda; y cuando la cuestión sea de interés común o general de muchas personas, o las partes sean numerosas, *y no fuese posible hacerlas comparecer a todas ante la corte, una o más podrán entablar la demanda o llevar la defensa en representación de todas.*—Código Enj. Civil, 1933, Art. 66." (Énfasis suplido.)

(⁴) Lee dicho comentario en lo pertinente:

" . . . Es menester recordar que debido al desenfrenado crecimiento poblacional, los miembros de la sociedad no alcanzan a conocer personalmente a sus demás congéneres, distinto a como sucedía en antaño cuando se habitaba en poblaciones íntimas y reducidas. Por eso es que la Regla 17 (acumulación permisible de partes) no cumple a cabalidad las distintas aspiraciones de reforma social que hallamos en diversos sectores de nuestro país y, que después de todo, son responsables de la necesidad de que haya un procedimiento eficaz disponible para adjudicar los derechos de un crecido número de personas. Con las nuevas reglas pretendemos afrontar las limitaciones que nos impone el actual sistema procesal, pues éste ya no responde adecuadamente a la urgencia del nuevo ritmo de marcha acelerada de la administración de la justicia." Historial, 32 L.P.R.A., Reglas, ed. 1983, pág. 230.

dadas en los mismos hechos o cuestiones de derecho, de manera que la adjudicación tenga la extensión y la profundidad necesarias para resolver las controversias planteadas.

El pleito de clase adelanta los objetivos siguientes: (1) fomenta la economía judicial en la medida que disminuye el número de casos que deben resolver los tribunales al permitirles adjudicar de una vez todas las cuestiones comunes a varios litigios. Además, evita la posibilidad de reclamaciones múltiples y repetitivas; (2) permite hacer justicia a personas que de otra manera no la obtendrían, especialmente cuando las sumas individuales en controversia no son cuantiosas y, por lo tanto, las personas agraviadas no se sienten motivadas a litigar, y (3) protege a las partes de sentencias inconsistentes. Newberg, *op. cit.*, T. 1, pág. 8.

La acción de clase, al permitir que una parte represente a otra que está ausente, pone en peligro el derecho a ser oído que tiene toda persona en el procedimiento donde se verán adjudicados sus derechos. Además, sin una debida programación y control, el pleito de clase puede generar costos administrativos muy elevados y demora en el movimiento de casos.[5] Sobre estas premisas y notas conflictivas se ha desarrollado la figura. Nuestra actual Regla 20 de Procedimiento Civil, *supra*, responde a los progresos de la jurisprudencia y el análisis teórico en el campo.

---

[5] El pleito de clase, como institución de litigación grupal que involucra múltiples partes y en ocasiones variadas controversias, requiere la toma de medidas para la eficiente estructuración y reglamentación de su trámite. Aunque no todos los pleitos de clase constituyen "casos civiles complejos", en los términos que expresamos en *Vellón* v. *Squibb Mfg., Inc.*, 117 D.P.R. 838 (1986), la mayoría de ellos requieren de una técnica y metodología similar a la de otros procedimientos complejos. *Manual for Complex Litigation Second*, Minnesota, West Pub. Co., 1985, sec. 30, pág. 205 *et seq.*; Nota, *Managing the Large Class Action: Eisen v. Carlisle Jacquelin*, 87 Harv. L. Rev. 426 (1973).

# III

En su estructura básica, la Regla 20 de Procedimiento Civil, *supra*, regula los requisitos que hacen posible la tramitación de una acción como pleito de clase (Regla 20.1), las situaciones clásicas que dan lugar a este tipo de litigio (Regla 20.2), provee para la certificación del mismo (Regla 20.3 y 20.4) y, por último, establece ciertas normas para su transacción y desistimiento (Regla 20.5).(6) Su texto vi-

---

(6) Las normas medulares se encuentran en las Reglas 20.1 y 20.2:

"*20.1. Requisitos para un pleito de clase*

"Uno o más miembros de la clase podrán demandar o ser demandados como representantes de todos los miembros de la clase solamente si (1) la clase fuere tan numerosa que la acumulación de todos los miembros resultare impracticable; (2) existieren cuestiones de hecho o de derecho común a la clase; (3) las reclamaciones o defensas de los representantes fueren típicas de las reclamaciones o defensas de la clase; y (4) los representantes protegerían [*sic*] los intereses de la clase de manera justa y adecuada.

"*20.2. Pleitos de clase sostenibles*

"Un pleito podrá sostenerse como un pleito de clase si los requisitos de la Regla 20.1 fueren satisfechos, y en adición:

"(a) la tramitación de pleitos separados por o en contra de miembros individuales de la clase crearía un riesgo de (1) adjudicaciones inconsistentes o variadas con respecto a miembros individuales de la clase, que establecerían normas de conducta incompatibles para la parte que se opone a la clase, o (2) adjudicaciones con respecto a miembros individuales de la clase, que para todos los fines prácticos dispondrían de los intereses de los otros miembros que no sean partes en las adjudicaciones o, empeorarían, o impedirían sustancialmente su habilidad para proteger sus intereses; o

"(b) la parte que se opone a la clase ha actuado o ha rehusado actuar por razones aplicables a la clase en general, en forma tal que resulte apropiado conceder finalmente un remedio mediante interdicto o sentencia declaratoria correspondiente con respecto a la clase en general; o

"(c) el tribunal determina que las cuestiones de hechos o de derecho comunes a los miembros de la clase predominan sobre cualesquiera cuestiones que afecten solamente a miembros individuales, y que el pleito de clase es superior a otros métodos disponibles para la justa y eficiente adjudicación de la controversia. Los asuntos pertinentes para las determinaciones incluyen: (1) el interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados; (2) la naturaleza y alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de miembros de la clase; (3) la deseabilidad de concentrar o no el trámite de las reclamaciones en el foro específico;

gente corresponde sustancialmente al de la Regla 23 de Procedimiento Civil federal. Luego de la aprobación de las Reglas de 1979 no habíamos tenido oportunidad de emitir una decisión que analizara las nuevas disposiciones.[7] Recurrimos, pues, con fines comparativos, a la interpretación que ha recibido la figura en la jurisprudencia federal.

■ La Regla 20.1 de Procedimiento Civil, *supra*, establece los cuatro requisitos necesarios para que pueda incoarse un pleito de clase:

(1) que la clase sea tan numerosa que la acumulación de todos los miembros resulte impracticable;

(2) que existan cuestiones de hecho o de derecho comunes a la clase;

(3) que las reclamaciones de los representantes fueren típicas de las reclamaciones de la clase;

(4) que los representantes protejan los intereses de la clase de manera justa y adecuada.

■ Ahora bien, para que proceda la certificación de un pleito como una acción de clase no basta con el cumplimiento de los cuatro requisitos de la Regla 20.1 de Procedimiento Civil, *supra*. Es necesario, además, que se satisfaga uno de los requisitos de la Regla 20.2 de Procedimiento Civil, *supra*. Los demandantes en este caso han solicitado la certificación

---

(4) las dificultades que probablemente surgirían en la tramitación de un pleito de clase." 32 L.P.R.A. Ap. III, Rs. 20.1–20.2.

(7) En *Pueblo* v. *Henneman*, 69 D.P.R. 995, 999–1000 (1949), al entender en una controversia bajo el palio del Art. 66 del antiguo Código de Enjuiciamiento Civil, adoptamos la doctrina expuesta por el Profesor Moore, a los efectos de que existían tres grupos de pleitos de clase ("legítima", "híbrida" y "espuria"). Véase, también, *Caguas L.Y., Inc.* v. *Tribunal Superior*, 96 D.P.R. 848, 851 (1969). En *Hernández Denton* v. *Western Pines Corp.*, 103 D.P.R. 741, 746 (1975), reconocimos la necesidad de hacer de la acción de clase un mecanismo procesal útil para los consumidores, a tenor con la Ley Núm. 118 de 25 de junio de 1971 (32 L.P.R.A. sec. 3341). Véase L. Fiol Matta, *La Acción de Clase del Consumidor*, 36 Rev. C. Abo. P.R. 683, 695 (1975).

de la clase bajo la Regla 20.2(b), *supra*, lo que implica una determinación de que "la parte que se opone a la clase ha actuado o ha rehusado actuar por razones aplicables a la clase en general, en forma tal que resulte apropiado conceder finalmente un remedio mediante interdicto o sentencia declaratoria correspondiente". Uno de los propósitos perseguidos con la adopción del inciso (b) fue el de facilitar la litigación de acciones de derechos civiles.

Examinemos brevemente los principios generales de la materia y su aplicación a los hechos de este caso.

## A. *Numerosidad*

■ Del mismo texto de la Regla 20.1 de Procedimiento Civil, *supra*, surge que el requisito de "numerosidad" cobra importancia en función de lo "impracticable" que resulte acumular en el mismo pleito a todos los miembros de la clase ("la clase fuere tan numerosa que la acumulación . . . resultare impracticable"), según los mecanismos tradicionales que proveen las reglas de procedimiento. Fuera de esta terminología, la Regla 20.1, *supra*, no ofrece una fórmula clara para determinar cuándo existe la condición inicial de numerosidad, lo que explica las fluctuaciones de la jurisprudencia en este punto. Newberg, *op. cit.*, T. 1, pág. 136. Sin embargo, esta misma jurisprudencia ha precisado con utilidad ciertos aspectos del principio.

■ Existe consenso en que el número de personas que pueden componer una clase no es decisivo en la determinación de "impracticabilidad"; se trata de una cuestión por resolver caso a caso según las circunstancias de cada uno. *DeMarcano v. Edens*, 390 F.2d 836 (1968); *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326 (1969); *Cash v. Swifton Land Corporation*, 434 F.2d 569 (1970); *Ballard v. Blue Shield of Southern W. Va., Inc.*, 543 F.2d 1075 (1976).

Tal concepto no significa que la parte tenga que demostrar que resulta *imposible* la acumulación, *Samuel* v. *University of Pittsburgh*, 56 F.R.D. 435 (1972); basta con que demuestre que tal proceder le crearía serios inconvenientes y obstáculos en la tramitación del caso. *Union Pacific Railroad* v. *Woodahl*, 308 F. Supp. 1002 (1970).

 Además del factor numérico, existen otros factores que ayudan al análisis, a saber, la dispersión geográfica, *Dale Electronics, Inc.* v. *R.C.L. Electronics, Inc.*, 53 F.R.D. 531 (1971); *García* v. *Gloor*, 618 F.2d 264 (1980); *Droughn* v. *FMC Corp.*, 74 F.R.D. 639 (1977); *EWH* v. *Monarch Wine Co., Inc.* 73 F.R.D. 131 (1977); *Ste. Marie* v. *Eastern R.R. Ass'n.*, 72 F.R.D. 443 (1976); la posibilidad de que los miembros de la clase puedan ser identificados para propósitos de la acumulación, *Gilchrist* v. *Bolger*, 89 F.R.D. 402 (1981); *Fewlass* v. *Allyn & Bacon, Inc.*, 83 F.R.D. 161 (1979); la naturaleza del pleito, *Horn* v. *Associated Wholesale Grocers, Inc.*, 555 F.2d 270 (1977); la cuantía de la reclamación, *Jordan* v. *County of Los Angeles*, 669 F.2d 1311 (1982), 103 S. Ct. 35, 713 F.2d 503 (1983), y la habilidad de cada miembro para hacer valer sus derechos de forma individual, *Paxton* v. *Union Nat. Bank*, 688 F.2d 552 (1982).

 Aunque la determinación inicial de si un pleito puede prosperar como acción de clase no puede descansar en la mera especulación y el peso de la prueba recae sobre el promotor de la certificación, la parte demandante no tiene que alegar ni probar el número exacto de miembros de la clase. Es suficiente con presentar alguna prueba o estimado razonable del número potencial de individuos representados. *Garcia* v. *Rush-Presbyterian—St. Luke's Medical Ctr.*, 80 F.R.D. 254, 268 (1978). *Cf. Jamerson* v. *Board of Trustees of Univ. of Alabama*, 662 F.2d 320 (1981).

## B. *Comunidad*

█ El requisito de que exista una cuestión de hecho o de derecho común a la clase es similar al que disponen las Reglas 17 y 21 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre acumulación e intervención, con la diferencia de que la Regla 20 de Procedimiento Civil, *supra*, no exige que las cuestiones de hecho o de derecho surjan del mismo acto, omisión o evento.

█ Existe una relación conceptual entre los requisitos de "impracticabilidad" y "comunidad"; ambos se refieren a los miembros ausentes o *clase representada,* mientras que los requisitos de "tipicidad" y "adecuada representación" describen las características que necesariamente deben poseer los *representantes.*

En esencia, todavía hoy la acción de clase constituye la forma o mecanismo de litigio por representación que le ofrece al tribunal la oportunidad de considerar en un solo caso todas aquellas cuestiones de hecho y de derecho que afectan a numerosas personas, lo que evita la fragmentación y multiplicidad de litigios.

█ Para que exista una comunidad en las cuestiones de hecho o de derecho entre los representantes y demás integrantes de la clase, no es necesario que se dé una completa identidad en tales asuntos. *Jordan* v. *County of Los Angeles,* supra; *Port Authority Police Benev. Assn.* v. *Port Authority,* 698 F.2d 150 (1983); *Abramovitz* v. *Ahern,* 96 F.R.D. 208 (1982). El concepto es cualitativo y no cuantitativo; se requiere tan sólo una cuestión común de hecho o de derecho. En principio, la existencia de particularidades — sobre todo en relación con las defensas que son oponibles a cada miembro— no derrota el cumplimiento de este requisito. *Stalling* v. Califano, 86 F.R.D. 140 (1980); *Holsey* v. *Ar-*

*mour & Co.*, 743 F.2d 199, 216–217 (1984); *Intern. Wood-workers* v. *Chesapeake Bay Plywood*, 659 F.2d 1259, 1269–1270 (1981); Newberg, *op. cit.*, T. 4, págs. 259–266. Sólo según la hipótesis de la Regla 20.2(c) de Procedimiento Civil, *supra*, es necesario que las cuestiones comunes a los miembros de la clase *"predominen* sobre cualesquiera cuestiones que afecten . . . a los miembros individuales", pero no aplica esta máxima a los supuestos o instancias que provee la Regla 20.2(a) y (b), *supra*. Newberg, *op. cit.*, T. 1, pág. 291.

Por supuesto, la comunidad de intereses es una cuestión de hechos que necesariamente hay que fijar antes de que pueda certificarse un pleito de clase.

Reconocemos que la existencia de una *práctica* de discrimen puede ser una cuestión común a los integrantes de una clase. Aunque de ordinario las reclamaciones por discrimen político son particularmente complejas, la regla procesal no cierra sus puertas en esos casos donde el *criterio partidista* opere como determinante de nombramientos y ascensos en el servicio público. Ahora bien, aunque los fundamentos prácticos e históricos del pleito de clase son contrarios a toda idea de que el demandante tiene que establecer de antemano —como condición a la certificación— que tiene probabilidades de prevalecer en su reclamación individual, es necesario en la vista de certificación una demostración específica de hechos sobre los que pueda descansar una legítima inferencia de discrimen político.

No bastan simples alegaciones de patrón de discrimen; es necesaria una demostración fáctica concreta sobre la que pueda descansar una inferencia de cuestión común —patrón y práctica— a través de las alegaciones sobre hechos específicos de discrimen, respaldados por los afidávit o evidencia en

la vista sobre certificación. Véase *General Telephone Co. of Southwest* v. *Falcon,* 457 U.S. 147 (1982).[8]

## C. *Tipicidad*

█ Otro de los requisitos es que las reclamaciones o defensas de los representantes sean típicas de las reclamaciones o defensas de la clase. Este criterio se asemeja en ciertos aspectos al de "comunidad", lo que plantea un problema de delimitación de conceptos. Sin embargo, el análisis en cada caso parte de perspectivas diversas. El requisito de "tipicidad" atiende a la cuestión de si existe una relación entre las reclamaciones de los demandantes y las de la clase que se intenta representar.

---

[8] Dentro de la gran masa de litigios tramitados en Estados Unidos bajo la rúbrica del pleito de clase, uno de los desarrollos más interesantes se halla en el área del discrimen en el empleo. Por ejemplo, la jurisprudencia sobre el Tít. VII de la Ley de Derechos Civiles de 1964 es fuente de inagotables estudios y controversias. *Title VII of the Civil Rights Act of 1964,* 42 U.S.C. sec. 2000e *et seq.* (1982), que prohíbe el discrimen en el empleo por razón de raza, color, religión, sexo u origen nacional. Quizás no existe una cuestión más estudiada en conexión con la Regla 23 federal. Aunque no podemos exponer en detalle los esfuerzos de la doctrina, remitimos a los siguientes estudios por ofrecer un marco conceptual de utilidad. Nota, *Certifying Classes and Subclasses in Title VII Suits,* 99 Harv. L. Rev. 619–634 (1986); Nota, *Class Action Certification in Title VII Litigation,* 39 Wash. & Lee L. Rev. 652–665 (1982); Nota, *The Use of Subclasses in Class Action Suits Under Title VII,* 9 Indus. Rel. L.J. 116–147 (1987); D.W. Anderson, *Title VII Class Actions: The End of the Irrelevant Plaintiff* (symposium), 36 Mercer L. Rev. 907–938 (1985); Comentario, *General Telephone Co. v. Falcon: Cutting Back Class Actions in Title VII Suits,* 34 Ala. L. Rev. 317, 326 (1983); J.A. Tisdale, *Deterred Nonapplicants in Title VII Class Actions: Examining the Limits of Equal Employment Opportunity,* 64 B.U.L. Rev. 151–197 (1984); Comentario, *Title VII Class Actions: A New Era,* 62 Neb. L. Rev. 130–156 (1983); Nota, *Reinstating Vacated Findings in Employment Discrimination Class Actions: Reconciling General Telephone Co. v. Falcon with Hill v. Western Electric Co.,* 1983 Duke L.J. 821–847 (1983); J.T. Warren, *Title VII of the Civil Rights Act of 1964, and Class Action Litigation,* 34 Baylor L. Rev. 177–208 (1982); G.A. Sape y T.J. Hart, *Title VII Reconsidered: Equal Employment Opportunity Act of 1972,* 40 Geo. Wash. L. Rev. 824 (1972).

 Cuando la reclamación de los demandantes es típica, los demandantes y los demás miembros de la clase tienen un interés en prevalecer en la reclamación compartida; de esta manera, cuando el representante defiende sus intereses, adelanta los intereses de toda la clase.

La fórmula tradicionalmente ha sido fuente de discordia. En ocasiones se alega que las diferencias fácticas hacen atípicas las reclamaciones de los representantes y los representados. En una variante, a menudo se alega que existen defensas oponibles contra ciertos demandantes que demuestran la poca probabilidad que éstos tienen de prevalecer en los méritos.

 Generalizar en este campo es un ejercicio inútil. El proceso opera sobre una lógica y realidad que es necesario descubrir caso a caso. La jurisprudencia y la doctrina aceptan que la clase no tiene que estar necesariamente compuesta por personas con idénticas reclamaciones, de modo que se produzca una circunstancia de impecable uniformidad. No obstante, en casos como el presente, donde las cuestiones principales requieren la adjudicación por separado de la reclamación o defensa de cada miembro de la clase, las situaciones individuales pueden tornar atípicas las reclamaciones de un demandante si son particularmente peculiares, o cuando los historiales de trabajo requieren defensas singulares. Newberg, *op. cit.*, T. 4, págs. 275–278.

D. *Adecuada representación*

 Una vez superadas las tres condiciones que preceden, el demandante que pretende representar a una clase tiene que cumplir con un requisito de génesis constitucional. Sólo la adecuada representación de los intereses de los miembros ausentes evita que la acción de clase sea inconstitucional al asegurar que se cumpla con el debido proceso de

ley. Sin duda, ante el principio sacramental que exige que toda persona cuyos derechos estén en controversia tengan su "día en corte", y que nadie pueda ser afectado por una sentencia *in personam* en un procedimiento en el cual no ha sido parte, *Pennoyer* v. *Neff*, 95 U.S. 714 (1877), la acción de clase constituye, desde el punto de vista conceptual, una anomalía.

La primera decisión que acepta, al menos en germen, la noción de que pueda extenderse la aplicación de una sentencia en un pleito de clase a todos sus miembros, aun cuando se tratase de lo que se conocía como clases "espurias", fue *Hansberry* v. *Lee*, 311 U.S. 32 (1940). Newberg, *op. cit.*, T. 1, pág. 376.

En la actualidad, los factores primordiales y notas diferenciales del análisis de "adecuada representación" se concentran en torno a: (1) la ausencia de conflicto, y (2) las garantías de litigación agresiva y vigorosa. La doctrina ha resaltado la relación que existe entre los prerrequisitos de tipicidad y adecuada representación. El primero es en realidad una forma de asegurar el segundo. Newberg, *op. cit.*, T. 1, pág. 199. Podría incluso aseverarse que todos los demás son más bien criterios para medir la existencia de una adecuada representación o posibilitarla al máximo.

Cuando las reclamaciones o defensas de los representantes no son típicas de las reclamaciones o defensas de la clase, existe un problema inherente de conflicto, ya que no se cumple con el requisito mínimo de adversariedad que caracteriza nuestro derecho adjudicativo. Es decir, no hay garantía de que los intereses de los ausentes se verán en controversia. Ausente el requisito de tipicidad, no hay adecuada representación de una clase y, por lo tanto, no hay garantía de cumplimiento con el debido proceso de ley. Formulada la cuestión en términos positivos, satisfecho éste

se aminoran los peligros que en estos casos confronta el debido proceso.

 Cuando no existe el peligro mencionado, el análisis de tramitación vigorosa enfatiza las características del abogado de los representantes de la clase.

 En cuanto a la competencia de la representación legal de la parte demandante, tradicionalmente se han tomado en cuenta, entre otros factores, la experiencia del abogado en ese tipo de casos y la calidad de los escritos y argumentos presentados en las etapas iniciales del caso, si el abogado ha mostrado puntualidad, capacidad y diligencia en el trámite judicial que abarca desde la presentación de la demanda —o su rápida contestación— el uso de los mecanismos de descubrimiento de prueba y el cumplimiento con las órdenes del tribunal, etc. Véanse, en general: Newberg, *op. cit.*, T. 1, pág. 253 *et seq.*; Comentario, *The Class Representative: The Problem of the Absent Plaintiffs*, 68 Nw. U.L. Rev. 1133, 1136 (1974). A falta de prueba específica de lo contrario, la competencia del abogado se presume. Newberg, *op. cit.*, T. 1, pág. 254.

 Dada la naturaleza del pleito de clase, el foro primario debe asegurarse de que la representación legal reúna los requisitos de calidad, objetividad y carácter requeridos para proteger adecuadamente los intereses de la clase. En este tipo de litigios los tribunales deben estar particularmente atentos a cualquier posibilidad de conflicto ético, a saber, si la representación de un cliente en un asunto puede afectar el interés de otro cliente anterior, si el abogado al aceptar una representación legal adelanta sus propios intereses como miembro de la clase o si, en el mismo plano ético, la tramitación del pleito de clase no persigue otro propósito

que el proporcionar al abogado un aumento en sus honorarios. Newberg, *op. cit.*, T. 1, págs. 255–259.

Cuando ocurren conflictos irreconciliables entre la representación legal y la clase, las reglas ofrecen varios recursos procesales: subclasificación, intervención, redefinición o limitación de la clase, etc. En especial, el enfoque sobre la subclasificación requiere que los tribunales participen activamente en la supervisión de los pleitos de clase. Éstos deben ir más allá de meramente responder a las subclasificaciones propuestas por los demandantes; deben también tomar la iniciativa y elaborar las subclases adecuadas. Los abogados de los demandantes a veces no tienen incentivo para proponer la certificación de subclases. Una división de la clase usualmente implica una división del control sobre el litigio y una división de los honorarios de abogado. Además, el abogado de los demandantes puede simplemente no tomar en consideración la posibilidad de presentar un esquema de subclasificación. En tal circunstancia, el tribunal puede adelantarse y definir las subclases.

Aclarada esta dimensión del conflicto, el análisis de intereses encontrados entre los representantes y los miembros de la clase que hizo el tribunal de instancia no es determinante. Razonó dicho foro que una adjudicación a favor de los demandantes, aquí peticionarios, afectaba negativamente las posibilidades de que otros maestros en la misma situación pudieran obtener una plaza permanente o probatoria. Como advierte el tratadista Newberg, "este tipo de rivalidad entre empleados es un rasgo normal en los pleitos de discrimen en el empleo ... [p]or lo tanto el enfoque prevaleciente reconoce que esta pugna potencial por las oportunidades de empleo no impide la certificación de la clase bajo la premisa de inadecuada representación". (Traducción nuestra.) Newberg, *op. cit.*, T. 4, pág. 285.

■ Por último, hay que recordar que en cualquier acción de clase la sentencia puede estar sujeta a ataque colateral por el fundamento de una inadecuada representación. La pesquisa en torno a la "adecuacidad" puede suscitarse luego del juicio cuando los miembros de la clase traten de prevenir la aplicación de los principios de *res judicata* en un pleito posterior.

## IV

■ Un examen del trasfondo doctrinal revela que la esfera asignada a la acción de clase en nuestro ordenamiento procesal es definida. Como recurso de excepción, exige un escrutinio riguroso por el tribunal toda vez que habrá de adjudicarse en el mismo los derechos de personas que no participarán en la litigación.

■ La Regla 20.1 de Procedimiento Civil, *supra*, exige que: (1) la clase sea tan numerosa que la acumulación de todos los miembros resulte impracticable; (2) existan cuestiones de hecho o de derecho comunes; (3) las reclamaciones o defensas de los representantes sean típicas de las reclamaciones o defensas de la clase, y (4) que los representantes protejan los intereses de la misma de manera justa y adecuada. Ausente cualquiera de estas condiciones no procede la certificación. Tampoco es necesario análisis ulterior sobre los restantes.

Un examen de los autos refleja el siguiente estado y situación al momento del tribunal a quo emitir la resolución denegatoria de la certificación de la clase.

El 5 de septiembre de 1985, según la minuta, el tribunal anunció la intención de dejar pendientes las mociones de desestimación de los demandados referentes, entre otros asuntos, al planteamiento de agotamiento de remedios administrativos. De forma parecida declaró sin lugar una moción

de desestimación del Lic. Carlos Romero Barceló y acordó resolver —como así hizo un día después— la solicitud de los demandantes para que el pleito se tramitara como uno de clase. El foro primario consideró los alegatos sobre el punto y la discusión del día anterior al resolver la referida solicitud. La dinámica procesal demuestra que se practicó descubrimiento de prueba y los demandantes no solicitaron ampliación de la vista sobre certificación. Las partes sometieron la cuestión.

Se alega por los peticionarios como cuestión común que aglutina a los miembros de la clase, que por razones de ideología política se les ha vedado el nombramiento a puestos probatorios o permanentes.

Notamos, sin embargo, que la certificación de la clase que proponen los peticionarios se enfrenta a numerosos imponderables que nacen de los criterios legislados para la otorgación de permanencia a los maestros del Departamento de Instrucción Pública. No podemos prescindir del análisis de las circunstancias individuales de cada miembro de la clase antes de determinar la existencia de cuestión común. El acceso a esos puestos no se logra con simplemente descartar el discrimen del marco del ejercicio profesional. Hay requisitos de preparación académica, experiencia, años de servicios, evaluación, plazas permanentes disponibles, turno del candidato en las listas de elegibles. En fin, del récord hasta ahora levantado por los demandantes peticionarios no se puede concluir que existan *cuestiones comunes* o que sus reclamaciones sean *típicas* y extensivas al grupo y, en consecuencia, que puedan asumir una *representación adecuada* de los intereses colectivos. Véase el Reglamento para Reclutamiento, Relección, Traslado y Reasignación de Maestros del Departamento de Instrucción Pública de 28 de mayo de 1975, según enmendado. La pluralidad de factores que pueden demorar el nombramiento de un maestro a un

puesto probatorio o permanente inevitablemente requería una actividad probatoria más enérgica en la vista de certificación.

En estas circunstancias, no hubo demostración suficiente por los actores, a quienes compete establecer lo apropiado del pleito de clase, de que sus representados fueron excluidos de puestos permanentes por razones distintas a las que proveen la ley y reglamentos pertinentes. Aparecen incumplidos por esta razón los requisitos de comunidad, tipicidad, adecuada representación, y de que el Departamento de Instrucción Pública haya rehusado actuar por razones aplicables a la clase en general. Regla 20.2(b) de Procedimiento Civil, *supra*. No es necesario, pues, pronunciamiento en torno al problema de la alegada numerosidad de la clase, asunto que como vimos más que de "números" se reduce a una determinación sobre lo "impracticable" que resulte la acumulación bajo el esquema tradicional.

■ En fin, fieles al ideal de eficiencia en la litigación, nada se ganaría en el mejor de los casos en términos de economía judicial con certificar una clase de maestros cualificados para nombramientos permanentes víctima de discrimen político, si llegado el momento de ejecutar la sentencia todos y cada uno de los miembros representados ausentes tuviesen que revalidar, con la prueba individual, su derecho a beneficiarse del pleito de clase.

■ Lo que aquí consignamos se funda en un examen de todos los elementos que se derivan de los autos hasta el momento. En modo alguno pasamos juicio en esta etapa sobre las probabilidades de éxito de las reclamaciones individuales. Tampoco precluye que los intereses de la clase se configuren plenamente en las etapas más avanzadas del proceso. A menudo, la determinación sobre la amplitud de la clase, la adecuada representación, la posibilidad de creación

de subclases o la imposición de límites a la existente, debe aguardar a los desarrollos en materia de prueba. No obstante, en estos momentos certificar una clase en los términos propuestos sería más gravoso que expeditivo.

Por las razones que anteceden, y en vista de que la revisión se da contra la sentencia y no sus fundamentos, *se confirmará la resolución del Tribunal Superior, Sala de San Juan.*

El Juez Asociado Señor Negrón García emitió opinión concurrente, a la cual se une el Juez Asociado Señor Rebollo López. El Juez Asociado Señor Ortiz se inhibió.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

Por no endosar todos los pronunciamientos de la opinión del Tribunal, optamos por certificar separadamente los fundamentos de nuestra concurrencia.

I

Hace aproximadamente cuatro (4) años —el 15 de diciembre de 1983— Daisy Cuadrado Carrión y dieciséis (16) maestros del Departamento de Instrucción Pública presentaron ante el Tribunal Superior, Sala de San Juan, una acción denominada "Demanda de Clase, Sentencia Declaratoria, *Injunction* y Daños y Perjuicios" contra el entonces Gobernador Lic. Carlos Romero Barceló, la Secretaria de Instrucción Pública María Socorro Lacot y varios funcionarios más. Anejo E, pág. 72.

En síntesis, alegaron que ellos ejercían el magisterio en diferentes, escuelas públicas del país y, no obstante llenar los

requisitos, los demandados, aquí recurridos, habían ilegalmente discriminado al no extenderles nombramientos probatorios o permanentes(1) por pertenecer al Partido Popular Democrático (P.P.D.) y no al Partido Nuevo Progresista (P.N.P.), a la sazón en el poder. Adujeron violación a sus derechos constitucionales. Los demandados recurridos contestaron, negaron tales alegaciones y se opusieron a la certificación del pleito de clase.

Luego de múltiples incidentes procesales, el 6 de septiembre de 1986 el tribunal resolvió en contra del pedido de certificación. La resolución, en lo pertinente, dispone:

En adición a los fundamentos y la jurisprudencia señalada por la parte demandada en su alegato, especialmente en cuanto a la falta de definición en la clase, consideramos que debemos denegar tal solicitud por dos razones patentes, a saber:

1. Los demandantes no pueden representar adecuadamente a la clase e inclusive podrían tener intereses encontrados con otros miembros de la clase.

La parte demandante sostiene que de 38,000 maestros que hay en Puerto Rico, *15,000 no tienen plazas permanentes o probatorias los cuales constituyen un grupo cuyo número hace impracticables [sic] su acumulación como demandantes en este pleito.* Si este Tribunal, en su día, adjudicara que los demandantes en el pleito tienen derecho a una plaza permanente o probatoria porque *teniendo las cualificaciones, se ha discriminado políticamente contra ellos,* tal determinación podría afectar negativamente las posibilidades de que otros maestros en la misma situación que no han obtenido dichas plazas puedan obtenerlas.

2. De las propias alegaciones de las partes surge que será necesario evaluar cada caso de cada maestro para determinar si ha obtenido la plaza por discrimen político, o por falta de requisitos, necesidades del servicio u otras causas legítimas. *De las propias alegaciones específicas de los demandantes*

---

(1) Ley Núm. 312 de 15 de mayo de 1938, según enmendada. 18 L.P.R.A. sec. 214.

*surgen variedad de casos y situaciones. Aun cuando ha-
ciendo un esfuerzo se pudiera encontrar semejanzas en los
casos es imposible asumir que los demás maestros en el
grupo de 15,000 se encuentren en situación parecida por las
mismas razones.* (Énfasis suplido.) Anejo A, págs. 1–2.

A solicitud de los demandantes peticionarios acordamos
revisar.

## II

La resolución antes transcrita contiene y expone, en la
medida necesaria, los fundamentos que validan la actuación
del foro de instancia. Para entenderla basta un examen de las
alegaciones básicas de la demanda. Ello nos permite, desde
este estrado apelativo y en buena metodología, limitar nues-
tro pronunciamiento al ámbito adjudicativo correspondiente
sin el imperativo de iniciar una incursión genérica de todos
los complejos situacionales que informa la Regla 20 de Pro-
cedimiento Civil sobre certificación de clase, 32 L.P.R.A. Ap.
III. Para ello, es suficiente una referencia y rápida ojeada a
la abundante literatura y casuística existente en los ana-
queles bibliotecarios.[2]

---

[2] J.C. Coffee, *Rethinking the Class Action: A Policy Primer on Reform*,
62 Ind. L.J. 625 (1987); G.S. Meece, *Class Actions, Typicality, and Rule 10B-5:
Will the Typical Representative Please Stand Up?*, 36 Emory L.J. 649 (1987);
J.C. Coffee, *Understanding the Plaintiff's Attorney: The Implications of Eco-
nomic Theory for Private Enforcement Law Through Class and Derivative Ac-
tions*, 86 Colum. L. Rev. 669 (1986); O.C. Twyner, *Federal Rule of Civil Procedure
23(a)(3) Typicality Requirement: The Superfluous Prerequisite to Maintaining
a Class Action*, 42 Ohio St. L.J. 797 (1981); S.M. Shafner, *The Juridical Links
Exception to the Typicality Requirement in Multiple Defendants Class Actions:
The Relationship Between Standing and Typicality*, 58 B.U.L. Rev. 492 (1978);
L.D. Harvey, *The Federal Courts Take a New Look at Class Actions*, 27 Baylor L.
Rev. 751 (1975); D.J. Steininger, *Class Actions: Defining the Typical and Repre-
sentative Plaintiff Under Subsections (a)(3) and (4) of Federal Rule 23*, 53
B.U.L. Rev. 406 (1973); A. Homburger, *State Class Actions and the Federal Rule*,
71 Colum. L. Rev. 609 (1971).

## Las Reglas 20.1 y 20.2 de Procedimiento Civil establecen:

### 20.1 Requisitos para un pleito de clase

Uno o más miembros de la clase podrán demandar o ser demandados como representantes de todos los miembros de la clase solamente si (1) la clase fuere tan numerosa que la acumulación de todos los miembros resultare impracticable; (2) existieren cuestiones de hecho o de derecho común a la clase; (3) las reclamaciones o defensas de los representantes fueren típicas de las reclamaciones o defensas de la clase; y (4) los representantes protegerían los intereses de la clase de manera justa y adecuada.

### 20.2 Pleitos de clase sostenibles

Un pleito podrá sostenerse como un pleito de clase si los requisitos de la Regla 20.1 fueren satisfechos, y en adición:

(a) la tramitación de pleitos separados por o en contra de miembros individuales de la clase crearía un riesgo de (1) adjudicaciones inconsistentes o variadas con respecto a miembros individuales de la clase, que establecerían normas de conducta incompatibles para la parte que se opone a la clase, o (2) adjudicaciones con respecto a miembros individuales de la clase, que para todos los fines prácticos dispondrían de los intereses de los otros miembros que no sean partes en las adjudicaciones o, empeorarían, o impedirían sustancialmente su habilidad para proteger sus intereses; o

(b) la parte que se opone a la clase ha actuado o ha rehusado actuar por razones aplicables a la clase en general, en forma tal que resulte apropiado conceder finalmente un remedio mediante interdicto o sentencia declaratoria correspondiente con respecto a la clase en general; o

(c) el tribunal determina que las cuestiones de hechos o de derecho comunes a los miembros de la clase predominan sobre cualesquiera cuestiones que afecten solamente a los miembros individuales, y que el pleito de clase es superior a otros métodos disponibles para la justa y eficiente adjudicación de la controversia. Los asuntos pertinentes para las determinaciones incluyen: (1) el interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados; (2) la naturaleza y alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de

miembros de la clase; (3) la deseabilidad de concentrar o no el trámite de las reclamaciones en el foro específico; (4) las dificultades que probablemente surgirían en la tramitación de un pleito de clase. 32 L.P.R.A. Ap. III, Rs. 20.1–20.2.

A su amparo, concluimos que no procedía la certificación de clase. Evaluemos el horizonte decisorio a la luz de la demanda, su naturaleza y requisitos que deben concurrir en un pleito de clase.

## CRITERIO CUANTITATIVO (NUMEROSIDAD)

Este criterio no se cumple. Resulta difícil comprender cómo Daisy Cuadrado Carmona y los cincuenta (50) reclamantes adicionales pretenden representar adecuadamente quince mil (15,000) maestros que alegadamente carecen de nombramientos probatorios o permanentes, según el fundamento de que *a todos* se les ha discriminado por razones políticas. Adviértase que tal alegación está predicada en un dato singular, a saber, que ellos son miembros activos y pertenecen al *P.P.D.* y por tal razón fueron objeto de discrimen inconstitucional por supuestas decisiones del Departamento de Instrucción Pública en la administración del *P.N.P.*

No debe subestimarse la importancia de esta alegación para configurar válidamente el pleito de clase. Es la columna vertebral de todo el planteamiento para invocar la jurisdicción del tribunal sin agotar remedios administrativos. Nos explicamos.

En ausencia de este reclamo de discrimen político partidista, de ordinario, la determinación de si uno o más maestros son acreedores a nombramientos probatorios o de permanencia es materia para ser presentada original y directamente ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.), como organismo encargado de administrar la Ley de Personal —Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*) *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838, 850–851 (1979). Después de todo,

no podemos olvidar que el Departamento de Instrucción Pública es un administrador individual que según la Ley de Personal está obligado a adoptar y observar un reglamento para las áreas esenciales del Sistema de Mérito y otras disposiciones relacionadas. Por su parte, J.A.S.A.P. tiene jurisdicción para dilucidar planteamientos de esta índole formulados por empleados *transitorios. Delgado* v. *D.S.C.A.*, 114 D.P.R. 177, 180 (1983).

La premisa subyacente de que esos quince mil (15,000) maestros pertenecen al *P.P.D.* y han sido objeto de igual discriminación, de su faz resulta altamente cuestionable por no decir imposible. En el mundo de las probabilidades, no es sostenible. Es ilógico e irrazonable estimar que entre tan numeroso grupo de personas el *spectrum* ideológico es idéntico. Lo normal es que sea variado y que se nutra proporcionalmente de los grupos de *distintas ideologías* políticas. ¿Cómo entonces sostener a priori capacidad representativa en tal débil fundamento numérico de discriminación política? No estamos ante una demanda fundada en la discriminación por sexo, raza o edad que constituyen características permanentes de fácil definición.

Lo expuesto nos lleva indefectiblemente a concluir que, en cuanto al requisito de numerosidad, estamos en la dimensión de lo especulativo. Aquí los cincuenta (50) demandantes peticionarios no han establecido —ni siquiera en aproximación— cuántos maestros de esos quince mil (15,000) aspiran a puestos permanentes. Tampoco cuántos cumplen con los requisitos de experiencia y educación necesarios. Ambas realidades las acepta este Tribunal en su opinión. El resultado es obvio. No han cumplido cabalmente con el requisito de la Regla 20.1(1) de Procedimiento Civil, *supra*, esto es, que la clase de miembros discriminados pertenecientes al *P.P.D.* sea tan numerosa que su acumulación resulte impráctica.

Sobre este extremo, es de singular importancia destacar que, aun después del 6 de septiembre de 1986, fecha en que el foro de instancia se negó a certificar la clase —dos (2) años y nueve (9) meses desde la presentación de la demanda, y excluidos seis (6) demandantes que voluntariamente desistieron de continuar la acción— solamente treinta y cinco (35) personas pidieron intervenir y lograron unirse a la reclamación original. Si ello tiene procesalmente algún significado es lo reducido de ese número. En términos de proyección éstos únicamente representan *punto cero cero tres por ciento* (.003%) del número de quince mil (15,000). Cuantitativamente, esta cifra refleja un estimado insignificante. La misma, matemáticamente destruye cualquier conjetura sobre el número potencial de individuos a ser representados en el caso.

A la proyección numérica que antecede, es menester señalar que, al ser contrastada con la pretensión de representar a tantos miles de personas, no hay en los autos suficiente evidencia para preliminarmente determinar la existencia de un patrón de comportamiento discriminatorio contra ese restante y numeroso personal docente. Repetimos, estamos ante una alegación de numerosidad que pertenece al ámbito conjetural. Véase D.J. Steininger, *Class Actions: Defining the Typical and Representative Plaintiff Under Subsections (a)(3) and (4) of Federal Rule 23*, 53 B.U.L. Rev. 406, 424–426 (1973).

## CRITERIO DE COMUNIDAD

Tampoco se cumple en el caso de autos con el requisito de que las cuestiones de hecho o de derecho sean comunes a la clase.

Según antes indicado resulta cuestionable que en lo *esencial* —discrimen político por pertenecer al *P.P.D.*— haya identidad. Además, ese solo reclamo no es suficiente para

automáticamente abrir la puerta de la antesala que conduce a los puestos permanentes o probatorios. En este aspecto es menester la concurrencia de variados requisitos tales como credenciales académicas, labor previa docente, evaluación y otros. A su vez, estos requisitos pueden estar afectados por múltiples circunstancias justificativas de demoras en el trámite administrativo.

Según esta óptica, en el plano teórico y abstracto, la existencia de un patrón de discrimen puede ser una cuestión común. Sin embargo, en el caso de autos la proposición es incorrecta e insostenible. La dificultad de esta línea de pensamiento es que contrario a lo propuesto por los maestros demandantes la discriminación, para fines de la certificación como clase, en lugar de unir, separa y debilita ese vínculo común. La controversia está inmersa en miles de personas en que el *spectrum* ideológico y las "rivalidades naturales" operan como impedimento. Nótese que se funda en una práctica discriminatoria específica contra los reclamantes como miembros del *P.P.D.* y en favor de los del *P.N.P.* Incontrovertidamente, ellos no pueden ostentar la representación de la clase en un ambiente y trasfondo cuya dinámica, lamentablemente, opera en un discrimen invocado como causa de acción para unir, y a la vez fuente de discordia. Aquí, recalcamos, las diferencias ideológicas entre los reclamantes y los maestros de nombres desconocidos, descontentos de esa masa, forzosamente es significativa.

## CRITERIOS DE TIPICIDAD

Informa Kaplan que el propósito de este requisito es "enfatizar que los representantes deben estar en intereses claramente alineados con el grupo representado". B. Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*, 81 Harv. L. Rev. 356, 376, 387 (1967).

Otra vez, resulta imposible cumplir con este criterio. La conducta administrativa impugnada que confirió jurisdicción al tribunal es el discrimen político. Por razones de las variantes ideológicas entre los quince mil (15,000) miembros del magisterio, difícilmente puede aceptarse que existe una misma teoría de conducta ilegal en que apoyar la certificación. Aunque se alega lo contrario, para todos los fines las reclamaciones no nacen ni surgen *de un mismo evento*, práctica o conducta administrativa. Véanse: G.S. Meece, *Class Actions, Typicality, and Rule 10B-5: Will the Typical Representative Please Stand Up?*, 36 Emory L.J. 649 (1987); S.M. Shafner, *The Juridical Links Exception to the Typicality Relationship Between Standing and Typicality*, 58 B.U.L. Rev. 492, 507 (1987).

## *CRITERIO DE ADECUACIDAD*

Finalmente, no está presente en el caso de autos el factor referente a la "ausencia de conflicto". *General Telephone Co. of Southwest* v. *Falcon*, 457 U.S. 147, 157 n. 13 (1982). Si en algo queda vulnerada la Regla 20 de Procedimiento Civil, *supra*, es en cuanto a este requisito. Pecaríamos de ingenuos si fuéramos a sostener que los reclamantes pertenecientes al *P.P.D.* y sus competentes abogados van a tramitar agresiva y vigorosamente estas reclamaciones a nombre de aquellos maestros identificados con el *P.N.P.*, cuando precisamente la causa del alegado discrimen brota de esas discrepancias ideológicas.

En resumen, el presente pleito no es susceptible de certificarse como de clase. No se satisface ninguno de los requisitos de numerosidad, comunidad, tipicidad y representación adecuada contenidos en la Regla 20, *supra*.

Aclarado de este modo el prisma decisorio —y despejada toda duda forense— cumplimos nuestra misión rectora de juzgar, *confirmando* al tribunal de instancia.