EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Guzmán Matías y Rafael Juarbe de Jesús por sí y en representación de la clase comprendida por todas las personas que se encuentran en la misma situación, según se describe en la demanda<br>    Demandantes-peticionarios<br><br>            v.<br><br> Vaquería Tres Monjitas, Inc. et al.<br>    Demandados-recurridos | Certiorari<br><br>2006 TSPR 187<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2004-811

Fecha: 14 de diciembre de 2006

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel IV

Juez Ponente:
> Hon. Carlos Rodríguez Muñíz

Abogado de la Parte Peticionaria:

> Lcdo. Domingo Donate Pérez

Abogados de la Parte Recurrida:

> Lcdo. Samuel Torres Cortés
> Lcdo. Juan M. Martínez Nevárez
> Lcdo. Luis G. Martínez-Llorens
> Lcdo. Miguel Simonet Sierra

Oficina del Procurador General:

> Lcda. Lizette Mejías Avilés
> Procuradora General Auxiliar

Materia: Daños y Perjuicios (Acción de Clase)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Guzmán Matías y Rafael
Juarbe de Jesús por sí y en
representación de la clase
comprendida por todas las
personas que se encuentran
en la misma situación, según
se describe en la demanda.
    Demandantes-peticionarios

                    v.

Vaquería Tres Monjitas, Inc.
et al.
     Demandados-recurridos

*Certiorari*

CC-2004-811

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 14 de diciembre de 2006.

I.

En este caso los peticionarios solicitan la revisión de una sentencia del Tribunal de Apelaciones, del 30 de julio de 2004, que confirma una resolución del Tribunal de Primera Instancia negándose a certificar el pleito de epígrafe como uno de clase. Nos corresponde determinar si a la luz de la Ley Núm. 118 de 25 de junio de 1971, que establece el pleito de clase de consumidores de bienes y servicios, y la Regla 20 de las de Procedimiento Civil de Puerto Rico este pleito se debe certificar como una acción de clase.

II.

El 30 de abril de 1999, los peticionarios presentaron una demanda sobre daños y perjuicios

contra Vaquería Tres Monjitas, Inc., Suiza Dairy Corp., Borinquen Dairy, Inc., la Junta Administrativa del Fondo para el Fomento de la Industria Lechera, Luis Fullana Morales, el Estado Libre Asociado de Puerto Rico y otros. Los peticionarios comparecieron "en su carácter personal… y en representación de toda o cualquier persona que constituya un miembro de su clase". Alegaron, en síntesis, que durante varios años, previo a diciembre de 1998, se llevó a cabo en Puerto Rico la práctica de adulterar la leche fresca añadiéndole sal y agua. Argumentaron que los recurridos tenían conocimiento o debieron tener conocimiento de dicha práctica. Asimismo, señalaron que el ELA fue negligente al no utilizar los mecanismos adecuados para detectar la práctica de adulteración de la leche. Adujeron que pagaron grandes sumas de dinero por un producto adulterado que no reunía los requisitos de integridad, salubridad e higiene que exigen las leyes de los Estados Unidos y de Puerto Rico a los fines de que se pudiera catalogar la leche como Grado A. Reclamaron, por sí y en representación de la clase consumidora de leche adulterada, $10,000 para cada peticionario, por haber pagado por la leche adulterada un precio mayor a su justo valor, y $10,000 por las angustias mentales y morales sufridas.

Luego de varios trámites interlocutorios, el 9 de septiembre de 1999 los peticionarios presentaron una Solicitud de Orden de Certificación de Clase, al amparo de la Ley Núm. 118 de 25 de junio de 1971, conocida como Ley de Acción de Clase para Consumidores de Bienes y Servicios, 32 LPRA § 3341-3344, y la Regla 20 de las de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. III, R. 20. El 14 de septiembre de 1999 los recurridos se opusieron a dicha solicitud.

El 10 de julio de 2002, las partes sometieron a la consideración del Tribunal de Primera Instancia un Informe Sobre Conferencia con Antelación a Vista Sobre Certificación de Clase. En el mismo, los peticionarios presentaron varias enmiendas a sus alegaciones: 1) solicitaron que se redujera la reclamación por concepto del exceso pagado por la leche de los diez mil dólares ($10,000) reclamados originalmente a "no menos de doscientos dólares cada uno"; 2) solicitaron que se redujera la reclamación de daños físicos y angustias mentales, de diez mil dólares ($10,000) a "no menos de $100.00 cada uno"; 3) se especificó que la definición de la clase era la de consumidores que compraron leche adulterada desde el 1994 al 1998, distinto a la demanda en la que no se indicaba periodo alguno; y 4) se excluyó de la clase a todos los empleados de las partes demandadas, los abogados de las partes y los jueces del sistema judicial de Puerto Rico.

Así las cosas, el 6 y el 7 de agosto de 2002, se celebró una vista sobre la certificación de la clase. El Tribunal de Primera Instancia solicitó a todas las partes que presentaran memorandos de derecho y posteriormente, el 29 de agosto de 2003, emitió una resolución y orden, notificada y archivada en autos el 11 de septiembre de 2003, en la que resolvió que la petición de certificación de clase no cumplía el requisito de *numerosidad* y la declaró sin lugar. Se basó el tribunal en que transcurridos aproximadamente cuatro años desde que se presentó la demanda ni tan siquiera una persona había solicitado intervención como demandante en el pleito de clase. Oportunamente, los peticionarios presentaron recurso de *certiorari* ante el Tribunal de Apelaciones. Ese foro

coincidió con el criterio del Tribunal de Primera Instancia y confirmó la resolución recurrida.

No contestes con esta determinación los peticionarios acuden ante este Tribunal alegando que tanto el Tribunal de Apelaciones como el Tribunal de Primera Instancia habían errado "al concluir que no procedía certificar el pleito como uno de clase porque conforme al estado de derecho vigente, los demandantes no cumplieron con el requisito de numerosidad".

Específicamente, los peticionarios indican que el Tribunal recurrido cometió un grave error de derecho al fundamentar su determinación en que se desconocía "si otros ciudadanos hubiesen solicitado intervención como parte representada en la acción de clase". Igualmente rechazan la contención del Tribunal de Apelaciones en cuanto a que para cumplir con el requisito de numerosidad los demandantes tenían que: a) presentar un estimado razonable de los consumidores que representan; b) presentar evidencia relacionada al número potencial de individuos representados que ingirieron leche adulterada; c) cualificar el número de consumidores de leche que hay en Puerto Rico y cuántos de éstos consumieron leche adulterada desde 1994 hasta 1998 y d) demostrar los hábitos de consumo de leche fresca de los miembros de la clase.

Asimismo, señalan que su demanda fue presentada al amparo de la Ley Núm. 118 de 25 de junio de 1971, la cual, según ellos, establece un estándar más flexible para definir una clase. Conforme a esta percepción, la Ley 118 tiene el propósito de "superar las limitaciones de la Regla 20 de Procedimiento Civil" por lo cual únicamente se requeriría "determinar si existe una cuestión común de hecho o de derecho, y que la acción de clase es superior a otros medios disponibles". En la alternativa alegan que

cumplen con los requisitos "supletorios" establecidos por la Regla 20. Por su parte, los recurridos señalan que la acción de clase del consumidor tiene que cumplir con los requisitos de la Regla 20 no obstante el lenguaje más flexible de la Ley 118. Así, indican que los peticionarios no cumplen con ninguno de los requisitos de la Regla 20 y, en la alternativa, señalan que tampoco cumplirían con los presupuestos de la Ley 118.

A través de sus alegaciones los peticionarios proponen que la acción de clase de consumidores de bienes y servicios reconocida en la Ley 118 es distinta a la acción de clase general de la Regla 20. El presente pleito requiere, pues, definir la relación entre ambas disposiciones, para entonces determinar si, en efecto, la presente causa de acción es certificable como una de clase. La controversia subyacente es determinar el estándar que deben seguir los tribunales a la hora de certificar que un pleito es de clase cuando quienes lo entablan son consumidores de bienes y servicios. Veamos.

III.

La acción de clase constituye una forma especial de litigación representativa que permite a una persona o grupo de personas demandar a nombre propio y en representación de otras personas que se encuentran en una situación similar a la suya pero no se encuentran ante el Tribunal. Cuadrado Carrión v. Romero Barceló, 120 DPR 434, 445-46 (1988). En términos generales, hemos indicado que este procedimiento adelanta tres intereses públicos, a saber, fomenta la *economía judicial* al permitirle a los tribunales adjudicar de una sola vez todas la cuestiones comunes a varios litigios, evitando así las reclamaciones múltiples; permite hacer *justicia* a personas que de otra forma no la obtendrían, especialmente cuando las sumas individuales que

están en controversia no son cuantiosas y por tanto los agraviados no se sienten motivados a litigar; y protege a las partes de sentencias *inconsistentes*. <u>Rivera Castillo v. Municipio de San Juan</u>, 130 DPR 683, 691 (1992); <u>Cuadrado Carrión v. Romero Barceló</u>, *supra* en la pág. 446 (1988). *Véase además*, 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1754, en la pág. 55 (2005).

Esta acción, como muchas de nuestras disposiciones procesales, tiene su origen en las prácticas consuetudinarias anglosajonas, donde surge como una excepción a la máxima que indica que cada persona tiene derecho a su "día en corte". La regla general del *common law* suponía que al resolverse una controversia todas las partes interesadas estuviesen presentes en el tribunal. Sin embargo, los tribunales ingleses de equidad (*equity*) -cuya función principal era hacer justicia rebasando los formalismos del derecho común- reconocieron que esta regla general era demasiado estricta; por eso desarrollaron un recurso para resolver cuestiones comunes a un grupo. Wright, MILLER & KANE, *supra* § 1751, en las págs. 10-11. Eventualmente esta práctica se introdujo en los Estados Unidos y en 1938, se convirtió en la Regla 23 de las

de Procedimiento Civil Federal.[1]

Dicha regla, redactada por el profesor James Moore, estableció tres formas o dimensiones de la acción de clase. Homburger, *State Class Actions and the Federal Rule*, 71 COLUMBIA L. REV. 609, 608-619 (1971). En primer lugar se hallaba la acción de clase verdadera, es decir aquella compuesta por personas que acuden al Tribunal alegando derechos solidarios entre los miembros de la clase. *Id. Véase además*, WRIGHT, MILLER & KANE, *supra* § 1752, en las págs. 19-22. En segundo lugar se encontraba la acción de clase denominada híbrida, compuesta por personas que acuden al tribunal con relación a derechos mancomunados sobre un fondo o propiedad específica. Homburger, *supra*. en la pág. 605. Por último, se introdujo la acción de clase llamada espuria, constituida por personas que son titulares de derechos mancomunados pero unidos por una cuestión de hecho o de derecho común. *Id*. en la pág. 606.

De acuerdo con *Moore* cada una de estas acciones tenía efectos sustantivos distintos. En esencia, consideraba que las sentencias dictadas en las acciones de clase verdadera e híbrida constituían *res judicata* para todos los miembros de la clase, mientras que en la acción de clase espuria los efectos se limitaban a las personas que eran acumuladas como partes ante el Tribunal. *Id*. Esta interpretación, aunque no fue incluida en la redacción de la Regla 20, fue adoptada vía interpretación judicial por los tribunales federales. *Id*.

---

[1] En los Estados Unidos la acción de clase que se desarrolló en Inglaterra adquirió una nueva dimensión ya que surgió un tipo de acción de clase en la que la sentencia del Tribunal no afectaba los derechos de personas que no fuesen acumuladas como partes. Dicha acción se convirtió en la Regla 48 de las de Equidad Federal, vigente entre 1842 y 1912, y se considera la base histórica de la llamada acción espuria. Eventualmente, en 1912, la Regla 48 fue sustituida por la Regla 38 la cual, contrario a lo anterior, no limitaba los efectos de la acción de clase a las partes ante el Tribunal. En 1938 la Regla 38 fue sustituida por la Regla 23 de Procedimiento Civil Federal. WRIGHT, MILLER & KANE, *supra* § 1752, en las págs. 18-26.

No todos los tratadistas estaban contestes. Algunos argumentaron que los efectos limitados de la acción de clase espuria adoptada en el ordenamiento procesal federal destruían el propósito mismo de la acción de clase. Así, por ejemplo, uno de ellos expresó lo siguiente:

> Where, as in the case of the spurious class suit, the conclusive effect of the class judgment has been repudiated, its efficacy has shriveled nearly to the vanishing point. As a result, subdivision 23(a) is not a class suit functionally. Thus, the spurious class suit, which on its face offered the greatest promise of enlarging the scope of federal representative actions, has been judicially divested of its great potential utility. Note, *Federal Class Actions: A suggested Revision of Rule 23*, 46 COLUMBIA L. REV. 818, 825 (1946).

Además, estas categorías crearon confusión en los tribunales los cuales, con la intención de hacer justicia, convertían clases típicamente espurias en alguna de las otras clases u olvidaban clasificar la clase, creando así problemas al momento de ejecutar la sentencia. *Véase*, Edward S. Labowitz, *Class Actions in the Federal System and in California: Shattering the Imposible Dream*, 23 BUFFALO LAW. REV. 601, 634 (1973).

Así las cosas, en <u>Hansberry v. Lee</u>, 311 US 32 (1940), el Tribunal Supremo de los Estados Unidos aceptó, en dicta, la posibilidad de que pudiera extenderse el efecto de una sentencia a miembros ausentes de una clase —como ocurre precisamente en las acciones de clase espurias— si éstos eran adecuadamente representados por los miembros presentes.[2] A tono con esta opinión, en 1966 se revisó la

---

[2] De acuerdo con el Tribunal *"…there is scope within the framework of the Constitution for holding in appropriate cases that a judgment rendered in a class suit is res judicata as to members of the class who are not formal parties to the suit. Here as elsewhere, the Fourteen Amendment does not compel state courts or legislatures to adopt any particular rule for*

Regla 23 de Procedimiento Civil Federal para eliminar la distinción artificial entre las distintas formas de acción de clase. En vez, se introdujo un concepto más práctico y cónsono con la naturaleza inclusiva de esa figura procesal. Así, la regla federal de 1966, aún vigente, eliminó las categorías antes mencionadas y creó un sistema procesal menos técnico y más abierto a las reclamaciones grupales. WRIGHT, MILLER & KANE, *supra* § 1752.

Como sabemos, en Puerto Rico hemos ido adoptando progresivamente el sistema procesal civil norteamericano.[3] Dentro de esa trayectoria, en 1943 se promulgaron nuevas Reglas de Enjuiciamiento Civil que eran esencialmente una traducción de las Reglas de Procedimiento Civil Federal. RAFAEL HERNÁNDEZ COLÓN, MANUAL DE DERECHO PROCESAL CIVIL 4-12 (1981). En ese momento introdujimos la figura de la acción de clase tal cual fue redactada en la Regla 23 de las de Procedimiento Civil Federal, en su versión de 1938. De esa forma, para definir una clase al amparo de nuestras disposiciones procesales de 1943 era necesario cumplir dos requisitos generales, a saber, que los miembros de la clase

---

establishing the conclusiveness of judgments in class suits; nor does it compel the adoption of the particular rules thought by this Court to be appropriate for the federal courts. With a proper regard for divergent local institutions and interests, *this Court is justified in saying that there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.*" Hansberry, 311 US *32*, 42. La opinión no indica qué constituiría una adecuada representación. Sin embargo, insinúa que para convertir una acción de clase espuria en una acción de clase verdadera sólo se requiere la notificación a los miembros de la clase que el demandante desea representar. *Id*. en la pág 45.

[3] Previo a la invasión norteamericana de 1898, en Puerto Rico regía el Código de Enjuiciamiento Civil de 1886 que se dejó vigente hasta el 16 de agosto de 1899, cuando el Gobierno Militar emitió la Orden # 118, que reorganizaba a judicatura y proveía en cuanto a procedimientos judiciales, civiles y criminales. Esta Orden fijó ciertas reglas procesales y reconoció la vigencia de muchas otras del anterior Código de Enjuiciamiento Civil, que siguió rigiendo parcialmente. El 10 de marzo de 1904 se aprobó el Código de Enjuiciamiento Civil 1904, preparado por la llamada "Comisión de Códigos", encargada de armonizar nuestro sistema legal con el nuevo régimen político. RAFAEL HERNÁNDEZ COLÓN, MANUAL DE DERECHO PROCESAL CIVIL 4-12 (1981).

fuesen tan numerosos que su comparecencia ante el tribunal fuese imposible y que existiese una adecuada representación de todos los miembros de la clase. Además, la nueva regla establecía las tres clasificaciones de clase según la relación jurídica de los miembros de la misma, o sea, "verdadera", "híbrida" y "espuria".[4]

Asimismo, al interpretar la regla seguimos la tendencia norteamericana de asignar efectos normativos distintos a cada tipo de clase.  De ese modo, en Pueblo v. Henneman, 69 DPR 995, 996, (1949), en una nota al calce, adoptamos el razonamiento seguido por la jurisprudencia federal en cuanto a estas categorías de la acción de clase.  Más tarde, en Caguas Lumber Yard, Inc. v. Tribunal Superior, 96 DPR 848 (1969) reiteramos la teoría del Profesor Moore, utilizada en los tribunales federales, en cuanto a que la acción de clase espuria es tan sólo un mecanismo de acumulación permisible que sirve para que los que estén en una situación similar a la del demandante puedan unirse al pleito, si así lo desean.  También resolvimos que la sentencia dictada en tales casos no sería concluyente para los miembros de la clase que no acudiesen como partes ante el tribunal.

De lo anterior se desprende que la acción de clase en Puerto Rico adolecía de los mismos males que la acción de clase en Estados Unidos antes de que fueran enmendadas las reglas procesales federales en 1966. Como señalamos, en Estados Unidos esta interpretación había causado serios problemas para entablar reclamaciones grupales que no presentaban derechos solidarios o mancomunados, fallas que

---

[4] En 1958, como consecuencia de la Constitución aprobada en 1952, se aprobaron nuevas Reglas de Procedimiento Civil derogaron en su totalidad las reglas de 1943.  No obstante, las disposiciones relativas a la acción de clase se mantuvieron esencialmente inalteradas.

fueron corregidas en las Reglas Federales mediante la enmienda de 1966.

En este contexto y en respuesta a la necesidad de hacer de la acción de clase un mecanismo *útil* para los consumidores, nuestra Asamblea Legislativa aprobó la Ley Núm. 118 de 25 de junio de 1971, 32 LPRA 334, creando la acción de clase del consumidor de bienes y servicios. Evidentemente, al aprobarse esta ley se estableció una *excepción* a la Regla 20.1, al disponer que una clase técnicamente "espuria" podía obtener una sentencia cuyos efectos se extenderían a todos los miembros de la clase aún cuando éstos no estuviesen presentes ante el tribunal. Específicamente, la Ley 118 reconoció el derecho de los consumidores de bienes y servicios y del ELA, en su carácter de *parens patriae*, a "instar un pleito de clase a nombre de dichos consumidores por razón de daños y perjuicios".

Esta nueva legislación incorporó, de forma abreviada, varias disposiciones de la Regla 23 federal. En primer lugar, requiere que el tribunal determine, tan pronto sea posible, si el pleito puede continuar como uno de clase, cuando entre los consumidores alegadamente afectados existe una cuestión común de hecho y derecho. Este requisito es similar al que se ha denominado "comunidad".[5] Igualmente, la Ley 118 requiere que se reconozca que la acción de clase es superior a otros medios disponibles para la justa adjudicación de la controversia. Por último, la Ley 118 adopta las normas de la Regla 23 federal sobre la notificación a los miembros de la clase.

El objetivo de superar los defectos de la Regla 20 entonces vigente queda claramente manifestado en el

---

[5] Este es el mismo requisito de la Regla 20.1(2) de las de Procedimiento Civil de Puerto Rico.

lenguaje extremadamente inclusivo que utilizó el legislador al definir la clase como aquel grupo de personas que tuviesen entre ellos una "cuestión común de hecho o de derecho". 32 LPRA § 3344. Esta intención se desprende también del Informe Conjunto del Senado sobre el P.S. 825 de 15 de abril de 1971, donde se indica expresamente que "el propósito de esta medida es *hacer una adición* a la Regla 20 de las de Procedimiento Civil a los fines de permitir a los consumidores de bienes y servicios instar un pleito de clase" (énfasis nuestro).

La exposición de motivos de la Ley 118 resalta la preocupación del legislador con las limitadas herramientas legales con las que cuentan los consumidores en Puerto Rico, al señalar que:

> Lamentablemente los remedios de que disponen los consumidores para hacer valer sus derechos son aún inadecuados y la protección que ofrece al consumidor la Administración de Servicios al Consumidor…[6] no es suficiente… Por lo tanto, se justifica el permitir una demanda directa por los consumidores en tales casos.

Además de esto, la Ley 118 reconoció la dificultad inherente en reclamar pequeñas cantidades frente a los grandes comercios. Así lo consigna también su exposición de motivos al afirmar que:

> Usualmente las acciones de los consumidores envuelven sumas de dinero tan pequeñas que no justifican un pleito individual; es más económico y justo el que reclamaciones esencialmente idénticas sean instadas en un solo pleito de clase a nombre de todos los consumidores defraudados o engañados… Este tipo de acción

---

[6] Antecesora del Departamento de Asuntos del Consumidor.

compensa la inhabilidad del consumidor individual de litigar pérdidas pequeñas individuales al permitir el que uno o más representantes de un grupo de consumidores con daños similares puedan instar el pelito a nombre de la clase… Estas están obligadas a considerar no solamente la pérdida económica directa del pleito de clase, sino también la publicidad y reacción del público con la consiguiente pérdida de tiempo, nombre o prestigio. En el interés de desalentar la conducta impropia y engañosa de los suplidores de bienes y servicios para los consumidores, la Asamblea Legislativa de Puerto Rico considera imperiosa necesidad establecer el pleito de clase para los consumidores.

Esto significa que la Ley 118 pretendió, por un lado, extender el alcance de la Regla 20 superando las limitaciones impuestas sobre la llamada clase espuria, y por el otro, autorizar a los consumidores a acudir directamente al Tribunal para vindicar sus derechos sin necesidad de ser socorridos por una agencia gubernamental. En ese sentido su objetivo es eliminar todos los obstáculos legales que dificultarían a los consumidores el acudir al Tribunal.

En pocas palabras, la acción de clase establecida mediante la Ley de Acción de Clase del Consumidor de Bienes y Servicios tuvo el propósito de *superar* las limitaciones de la antigua Regla 20 de las de procedimiento civil, permitiendo que tanto los consumidores como el Estado acudieran ante los tribunales para salvaguardar los derechos de los consumidores. Constituyó, según su exposición de motivos, "una adición" a las disposiciones generales de la Regla 20. Por tanto, no creó una acción de clase necesariamente distinta sino que, reconociendo el

interés público en proteger a los consumidores de bienes y servicios, extendió el alcance de la acción de clase con respecto a ellos. Esto, unido al hecho de que la Ley 118 no establece criterios específicos para definir lo que constituye una clase, significa que al momento de certificar una clase los tribunales deben examinar si ésta cumple no sólo con la definición general de la Ley 118 sino también con los requisitos específicos de la Regla 20.

Debemos destacar que la Regla 20 vigente al presente es la versión enmendada en 1979, después de la promulgación de la Ley 118. Ese año se revisó la Regla 20 en su totalidad para asemejarla a la Regla 23 de las de Procedimiento Civil Federal adoptada en 1966 y permitir, por ende, la presentación de acciones de clase típicamente espurias. Evidentemente, se quiso flexibilizar tanto la definición como el alcance de la acción de clase para que estuviera al alcance de otros grupos que, como el de consumidores de bienes y servicios, no tendrían de otra

forma y como cuestión práctica, oportunidad de reclamar sus derechos en los tribunales.[7]

Es necesario reconocer que al enmendarse la Regla 20 la Ley 118 perdió parte de su relevancia inicial. No obstante, esto no significa que sea letra muerta. Al aprobarse la nueva Regla 20 nuestra Asamblea Legislativa no

---

[7] "Hoy día [las] clasificaciones [de verdadera, híbrida y espuria] han perdido virtualidad jurídica, pues la nueva Regla, aún cuando no difiere materialmente de la Regla 20.1 vigente, ha ampliado su alcance para incluir adicionalmente los pleitos en que las reclamaciones o defensas de los representantes fuesen típicas de las reclamaciones o defensas de la clase y los pleitos en que en que los representantes protegerían justa y adecuadamente los intereses de la clase. Además, estas clasificaciones ya no servirán para fines de determinar cuándo la sentencia dictada en una acción de clase constituye *res judicata* para todos los miembros de la clase." Informe del Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico, 67-68 (1977).

derogó la Ley de Acción de Clase del Consumidor. Esta subsiste como una herramienta específica que otorga a los consumidores un instrumento amplio y efectivo para proteger sus derechos. Si bien se trata de una acción de clase esencialmente similar a la de la Regla 20, la Ley de Acción de Clase del Consumidor permite conceder unos remedios adicionales, entre éstos el *injunction*, y le reconoce el derecho a los consumidores a entablar una acción al amparo de la Ley de Monopolios del Estado Libre Asociado de Puerto Rico, 10 LPRA § 257 et. seq.

Como señalamos anteriormente, la Ley 118 autoriza a los consumidores de bienes y servicios para que acudan a los tribunales a vindicar sus derechos, permitiéndoles evitar los obstáculos que en ocasiones puede presentar la burocracia de las agencias llamadas a defenderlos. La Ley 118 constituye, pues, un mandato para que los tribunales abramos las puertas a los consumidores agraviados por

prácticas ilícitas de los proveedores de bienes y servicios.

Este mandato fue refrendado tan recientemente como en el 2002, al aprobarse la Ley Núm. 269 de 16 de noviembre de ese año que enmendó la Ley 118 para aclarar la jurisdicción primaria del Tribunal de Primera Instancia en este tipo de litigios. Allí el legislador señaló en su exposición de motivos que:

> La protección de los consumidores de bienes y servicios está revestida del más alto interés público… Por medio de esta Ley, esta Asamblea Legislativa solidifica la causa de acción provista por la Ley Núm. 118 al aclarar que el Tribunal de Primera Instancia tiene jurisdicción exclusiva por tratarse de una causa de acción especial.

En resumidas cuentas, al evaluar la discreción del Tribunal de Primera Instancia a la hora de certificar una clase no podemos dejar de lado el mandato de nuestra Asamblea Legislativa de despejar el camino de los tribunales al consumidor.

De todo lo anterior es menester subrayar los siguientes puntos. En primer lugar, la Ley 118 no creó una forma de acción de clase distinta a la establecida por la Regla 20, sino que extendió los remedios disponibles para los consumidores de bienes y servicios. En términos de los requisitos aplicables para certificar una clase de consumidores de bienes y servicios debemos enfatizar los requisitos de "predominio y superioridad", y "comunidad" los cuales, aunque presentes en la Regla 20, son los únicos expresamente dispuestos en la Ley 118. Esto significa que cuando se presenten acciones de clase al amparo de esta Ley

debemos atender primeramente a estos dos requisitos para determinar si una alegada clase es acreedora de los remedios que allí se establecen. Una vez se satisfacen los requisitos de "preponderancia y superioridad", y "comunidad" es necesario examinar si entonces se cumplen los demás requisitos supletorios de la Regla 20, o sea, numerosidad, tipicidad y adecuada representación. Sin embargo, al aplicar estos requisitos venimos llamados a interpretarlas con el espíritu de liberalidad e inclusión que inspiró la Ley 118.

## III.

Aclarado lo anterior examinemos los hechos particulares de este caso interpretando los criterios de "predominio y superioridad" dispuestos en la Ley 118 y los demás criterios de la Regla 20 de Procedimiento Civil, con

la liberalidad que nos requiere la Ley 118.  No hay duda que está dentro del amplio marco de discreción del Tribunal de Primera Instancia el determinar si un pleito debe constituirse como acción de clase. Esto comúnmente significa que los Tribunales revisores no deben intervenir con esa decisión, a menos que se demuestre que el foro de instancia ha abusado de su discreción.  Meléndez Vega v. Caribbean Intl. News, 151 D.P.R. 649, 664 (2000); Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986); Valencia, Ex parte, 116 D.P.R. 909, 913 (1986); Ortiz Rivera v. Agostini, 92 D.P.R. 187, 193 (1965). JOSÉ CUEVAS SEGARRA, TRATADO DE DERECHO PROCESAL CIVIL, 396. No obstante, como señalamos anteriormente, en el caso particular de la acción de clase de los  consumidores de bienes y servicios, dicha discreción está *limitada* por el interés público en favor de los consumidores según plasmado en la Ley 118.  No actuar de esta manera iría en contra de una clara y reiterada intención legislativa.

La Regla 20.1 de Procedimiento Civil, establece cuatro requisitos para que pueda incoarse un pleito de clase: (1) que la clase sea tan numerosa que la acumulación de todos los miembros resulte impracticable, es decir, *numerosidad*; (2) que existan cuestiones de hecho o de derecho comunes a la clase, o sea, *comunidad*; (3) que las reclamaciones de los representantes sean típicas de las reclamaciones de la clase, o sea, *tipicidad*; (4) que los representantes protejan los intereses de la clase de manera justa y adecuada.

Además, para que proceda la certificación de un pleito como una acción de clase es igualmente necesario que se satisfaga, al menos, uno de los requisitos de la Regla 20.2

de Procedimiento Civil.[8]    De entre estos requisitos alternativos, la propia Ley 118 exige que se cumpla específicamente con el requisito de "predominio y superioridad" contenidos en la Regla 20.2 (c).    De forma muy similar al lenguaje utilizado para definir la desaparecida acción de clase espuria, este inciso (c) define una clase sostenible como aquella en la cual "cuestiones de hechos o de derecho comunes a los miembros de la clase predominan sobre cualesquiera cuestiones que afecten solamente a miembros individuales".

   *A. Comunidad, predominio y superioridad*

   Los requisitos de "comunidad" y "predominio y superioridad" están íntimamente relacionados y los examinaremos en conjunto.    El requisito de que exista una cuestión de hecho o de derecho común a la clase es similar a lo que se requiere para la acumulación e intervención en las Reglas 17 y 21 de Procedimiento Civil, 32 L.P.R.A. Ap.

---

[8] La Regla 20.2, 32 LPRA Ap. III, R. 20.2, dispone que un pleito podrá sostenerse como un pleito de clase si cumple con los siguientes requisitos adicionales.

(a) la tramitación de pleitos separados por o en contra de miembros individuales de la clase crearía un riesgo de (1) adjudicaciones inconsistentes o variadas con respecto a miembros individuales de la clase, que establecerían normas de conducta incompatibles para la parte que se opone a la clase, o (2) adjudicaciones con respecto a miembros individuales de la clase, que para todos los fines prácticos dispondrían de los intereses de los otros miembros que no sean partes en las adjudicaciones o, empeorarían, o impedirían sustancialmente su habilidad para proteger sus intereses; o

(b) la parte que se opone a la clase ha actuado o ha rehusado actuar por razones aplicables a la clase en general, en forma tal que resulte apropiado conceder finalmente un remedio mediante interdicto o sentencia declaratoria correspondiente con respecto a la clase en general; o
(c) el tribunal determina que las cuestiones de hechos o de derecho comunes a los miembros de la clase predominan sobre cualesquiera cuestiones que afecten solamente a miembros individuales, y que el pleito de clase es superior a otros métodos disponibles para la justa y eficiente adjudicación de la controversia. Los asuntos pertinentes para las determinaciones incluyen: (1) el interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados; (2) la naturaleza y alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de miembros de la clase; (3) la deseabilidad de concentrar o no el tramite de las reclamaciones en el foro especifico; (4) las dificultades que probablemente surgirían en la tramitación de un pleito de clase.

III, con la diferencia de que la Regla 20 no exige que las cuestiones de hecho o de derecho surjan del mismo acto, omisión o evento. Además, este requisito está presente en la Ley 118 en su sección 4, en donde se dispone que "el tribunal… determinará si existe una cuestión común de hecho y de derecho y que la acción de clase es superior a otros medios disponibles para la adjudicación justa y eficiente de la controversia", 32 LPRA § 3344.

Por otra parte, como dijéramos en <u>Cuadrado Carrión v. Romero Barceló</u>, *supra* en la pág. 451, hay una relación conceptual entre los requisitos de "impracticabilidad" y

"comunidad". Ambos se refieren a quienes componen la clase, es decir, a los miembros ausentes o clase representada, mientras que los requisitos de "tipicidad" y "adecuada representación", que discutimos más adelante, describen las características que necesariamente deben poseer los *representantes*.

Para cumplir con el requisito de "comunidad" no es necesario que los asuntos planteados sean completamente idénticos. <u>Forbush v. J.C. Penney Co</u>., 994 F. 2d 1101 (1993); <u>Port Authority Police Benev. Assn. v. Port Authority</u>, 698 F.2d 150 (1983); <u>Abramovitz v. Ahern</u>, 96 F.R.D. 208 (1982). El concepto es cualitativo y no cuantitativo; se requiere tan solo que lo reclamado requiera resolver una cuestión de hecho o de derecho común a los representados y, según establecen tanto la Regla 20.2(c) como la Ley 118, que las cuestiones comunes a los miembros de la clase "*predominen* sobre cualesquiera cuestiones que afecten...a los miembros individuales" y la acción de clase sea el medio superior para adjudicar la controversia. Véase Wright, Miller & Kane *supra* §§ 1763 y 1766. Esta máxima no aplica a los supuestos o instancias

que provee la Regla 20.2(a) y (b), <u>Cuadrado Carrión v. Romero Barceló</u>, *supra* en la pág. 451.

Los peticionarios alegan que hay entre los miembros de la clase que intentan representar una cuestión común de hechos, a saber, la alegada venta de leche adulterada por las codemandadas Tres Monjitas y Suiza a los consumidores de leche fresca en Puerto Rico. Aducen, y admite el propio Tribunal de Primera Instancia, que para certificar la clase no es necesario demostrar que efectivamente se vendió leche adulterada ni tampoco los daños que ésta, de haber sido consumida, hubiese causado. Esas determinaciones corresponden a una etapa evidenciaria posterior en el litigio ante el Tribunal de Primera Instancia. En la etapa en que se encuentran los procedimientos sólo es necesario demostrar que la alegada conducta de los demandados es común a los miembros de la clase según definida por sus representantes. Evidentemente, los argumentos de los recurridos en cuanto a que en Puerto Rico "nunca se vendió leche adulterada" o en cuanto a que son ellos los perjudicados por el fraude de leche adulterada, sobran en esta etapa del litigio.

Por otra parte, no nos cabe duda de que en el presente caso la acción de clase resulta superior a otros medios para resolver la controversia. Para atender el requisito de superioridad es necesario tener presente las guías que propone la Regla 20.2(c), es decir, "el interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados; la naturaleza y alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de miembros de la clase; la deseabilidad de concentrar o no el trámite de las reclamaciones en el foro especifico; las dificultades que

probablemente surgirían en la tramitación de un pleito de clase". Veamos.

En términos del interés individual de los miembros de la clase propuesta debemos señalar que resulta evidente el desinterés de presentar reclamaciones individuales para recobrar el exceso pagado y los daños como consecuencia de comprar leche adulterada. Este desinterés se puede inferir lógicamente de la naturaleza de la reclamación y de lo complicado que resulta un litigio donde habrán de probarse

asuntos técnicos sobre calidad de la leche. Además, la pérdida individual de los miembros de la clase resulta relativamente pequeña e inatractiva para obtener representación legal individual. Igualmente, aún suponiendo que la cuantía a reclamarse individualmente fuera sustancial, resultaría sumamente impráctico y oneroso a los fines de impartir justicia que cada consumidor tuviera que acudir individualmente ante los tribunales para exigir compensación como consecuencia del consumo de leche adulterada. Tampoco surge del expediente que exista algún otro pleito similar al presente que provoque algún impedimento en cuanto a los criterios segundo y tercero del inciso (c) de la Regla 20.2. Por último, en cuanto a la manejabilidad del pleito, debemos señalar que el elevado número de litigantes no puede constituir por sí solo un obstáculo para no certificar una clase. Dicho argumento es contrario al propio espíritu de la Ley 118 y va contra la lógica interna del la Regla 20, la cual requiere que la clase sea numerosa.

Resuelto lo anterior, examinemos brevemente los demás requisitos generales de la Regla 20 aplicables al presente caso.

*B. Numerosidad*

La Regla 20 no ofrece parámetros sobre lo que constituye una clase numerosa. Esto explica que la jurisprudencia fluctúe en su interpretación. No obstante, existe consenso en que el numero de personas que pueden componer una clase no es decisivo en la determinación de "impracticabilidad"; se trata de una cuestión a resolver caso a caso según las circunstancias. Cuadrado Carrión v. Romero Barceló, *supra* en la pág. 449, *citando a* DeMarcano

v. Edens, 390 F.2d 836 (1968); Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (1969); Cash v. Swifton Land Corporation, 434 F.2d 569 (1970); Ballard v. Blue Shield of Southern W. Va., Inc., 543 F.2d 1075 (1976); Weiss v. York Hosp., 745 F.2d 786 (3rd Cir. 1984) *Véase además* WRIGHT, MILLER & KANE *supra* § 1762. La impracticabilidad no significa tampoco que quien solicita la certificación tenga que demostrar que resulta *imposible* la acumulación, Cuadrado Carrión v. Romero Barceló, *supra*, en la pág. 450; Samuel v. University of Pittsburgh, 56 F.R.D. 435 (1972); basta con que demuestre que tal proceder le crearía serios inconvenientes y obstáculos en la tramitación del pleito. Cuadrado Carrión v. Romero Barceló, *supra*, en la pág. 450 citando a Union Pacific Railroad v. Woodahl, 308 F. Supp. 1002 (1970). Véase Robidoux v. Celan, 987 F. 2nd 931, 935 (1993).

Hemos reconocido, además, otros elementos que unidos a este factor numérico ayudan al análisis. A los efectos señalamos, por ejemplo, la dispersión geográfica, la posibilidad de que los miembros de la clase puedan ser identificados para propósitos de la acumulación, la naturaleza del pleito, la cuantía de la reclamación, y la habilidad de cada miembro para hacer valer sus derechos de

forma individual, <u>Cuadrado Carrión v. Romero Barceló</u>, *supra* en la pág. 450.

La determinación inicial de si un pleito puede prosperar como acción de clase no puede descansar en la mera especulación, recayendo el peso de la prueba sobre el promotor de la certificación. Ello no significa, sin embargo, que esa parte tenga que alegar o probar el número exacto de miembros de la clase. Es suficiente que presente

alguna prueba o *estimado razonable* del numero potencial de individuos representados. *Id. citando a* <u>Garcia v. Rush–Presbyterian--St. Luke's Medical Ctr</u>., 80 F.R.D. 254, 268 (1978). *Véase* <u>Vergara v. Hampton</u>, 581 F. 2d 1281 (1993).

En este caso el Tribunal de Primera Instancia concluyó que "la potencial clase representada por Guzmán y Juarbe es una numerosa. A base de un análisis del consumo de leche en el país, no tenemos duda de que existe la probabilidad de que concurra un nutrido grupo de ciudadanos que pueda formar parte de la clase…". Sin embargo, el tribunal también indicó que "transcurridos cuatro años de presentada la acción de marras, no tenemos conocimiento de ciudadanos puertorriqueños que hayan solicitado formalmente intervenir como parte representada de la clase". Señalado esto, concluyó que no procedía convertir el pleito en una acción de clase porque no se había cumplido con el requisito de "numerosidad".

No existe controversia alguna sobre el hecho de que ningún otro consumidor, aparte de los demandantes, ha solicitado intervenir en el pleito que nos ocupa. No obstante, ni la Regla 20 ni mucho menos la Ley 118 requieren dicha intervención. Más aún, si se requiriera que otros consumidores interviniesen en el pleito para lograr certificar la clase nos colocaríamos en una

situación similar, aunque no idéntica, a la que se daba cuando estaba vigente la versión anterior de la Regla 20. El objetivo expreso de la Ley 118, según explicáramos, es alentar que lleguen al Tribunal aquellas reclamaciones que por tratarse de cuantías insignificantes a nivel individual realmente no motivan la comparecencia de los consumidores individuales al tribunal, pero que a nivel colectivo o grupal resultan muy importantes. Permitir que un tribunal exija a su discreción la intervención de otros demandantes como condición para certificar una clase derrota el propósito mismo de esta ley.

Igualmente contraria a la Ley 118 resulta la conclusión del Tribunal de Apelaciones, en el sentido de que al ser "imposible identificar los miembros de la alegada clase… para propósitos de acumulación" era "forzoso… colegir que el requisito de numerosidad no está presente en el caso". Nuevamente, esa interpretación de la acción de clase del consumidor nos regresa al estado de derecho previo a las reformas legales que hemos discutido y es contraria a la política pública plasmada en la Ley 118. Nada en la Ley 118 o en la Regla 20 vigente sugiere que los potenciales miembros de la clase tengan que ser "identificados" o específicamente enumerados. Como ya indicáramos, no es necesario ni siquiera ofrecer un número exacto de los miembros de la clase, siendo suficiente someter un estimado razonable. En este sentido los peticionarios argumentan correcta-mente que el criterio adoptado por la sentencia recurrida excluiría de la definición de clase a la mayor parte de los posibles litigios de consumidores. La Ley 118 responde, precisamente, a la dificultad de poder identificar a consumidores que hubiesen pagado a sobreprecio bienes

comestibles, tales como café, pan, agua embotellada y otros. Establecer un estándar de "numerosidad" tan estricto dejaría desprovistos de remedio a las personas que esta ley quiso proteger y colocaría en una posición muy ventajosa a los grandes proveedores de bienes y servicios, contrario al objetivo expreso de la Ley 118.

A través de los testimonios de los propios demandados durante la vista para la certificación de clase se presentó un "estimado razonable" del número potencial de miembros de la clase. Los demandados indicaron cuántos cuartillos de leche fresca se vendían al año y el estimado de consumo per cápita anual, lo cual permitía deducir claramente cuán numerosa es la clase de consumidores representados en el pleito.

De esa forma, con los testimonios de los Señores Luis Fullana Morales, Leovigildo Méndez y José Meléndez Rodríguez quedaron establecidos varios hechos muy importantes. En primer lugar, quedó establecido que las compañías demandadas venden y elaboran toda la leche que se consume en Puerto Rico. También se demostró que en el año 1993 y 1994 las codemandadas Suiza y Tres Monjitas vendieron 311,820,081 de cuartillos de leche fresca. Se estima que los puertorriqueños consumen alrededor de 90 cuartillos per cápita. Basado en estos mismos datos los demandantes estiman en 3,464,668 millones de consumidores de leche en Puerto Rico.

C. Tipicidad

Las reclamaciones o defensas de los representantes deben ser típicas de las reclamaciones o defensas de la clase. Este criterio, semejante al de "comunidad", versa sobre una de las características que los demandantes deben poseer. El requisito de "tipicidad" atiende específicamente

a la relación entre las reclamaciones de los demandantes y las de la clase que se intenta representar. Ciertamente, este requisito también está relacionado con el hecho de que quienes representan a la clase deben defender adecuadamente los intereses de sus miembros.

Cuando la reclamación de los demandantes es típica, los demandantes y los demás miembros de la clase tienen un interés en prevalecer en la reclamación compartida; de esta manera, cuando el representante defiende sus intereses, adelanta los intereses de toda la clase. En ocasiones, como ocurrió en Cuadrado Carrión, supra, la causa de acción provoca que los intereses de algunos miembros de la clase sean inherentemente opuestos. En ese caso resolvimos que una supuesta clase que alegaba discrimen político, pero que estaba compuesta de miembros de ambos partidos políticos, no cumplía con el requisito de tipicidad debido a los intereses encontrados de los miembros de la clase.

Por su propia naturaleza, la determinación de tipicidad opera caso a caso. La jurisprudencia y la doctrina aceptan que la clase no tiene que estar necesariamente compuesta por personas con reclamaciones idénticas, de modo que se produzca una circunstancia de impecable uniformidad. Cuadrado Carrión, supra en la pág. 454. En el presente caso no hay duda que los demandantes cumplen con este requisito. Ni de las alegaciones de las partes ni del expediente se desprende que exista la posibilidad de conflicto entre los miembros de la clase propuesta. Los representantes de la clase no presentan ninguna alegación que resulte contraria u opuesta a la reclamación típica de consumidores de leche adulterada. No podemos inferir lógicamente, ni las partes han propuesto, ningún conflicto entre las reclamaciones que hacen los

demandantes y otras que podrían realizar otros consumidores de leche defraudados.

*D. Adecuada representación*

Este último requisito goza de especial relevancia ya que tiene su génesis constitucional en el debido proceso de ley. Después de todo "[s]ólo la adecuada representación de los intereses de los miembros ausentes evita que la acción de clase sea inconstitucional al asegurar que se cumpla con el debido proceso de  ley." Cuadrado Carrión, supra en la pág 454-455.  Este requisito subsana la exigencia de que toda persona tenga su "día en corte", y que nadie pueda ser afectado por una sentencia *in personam* en un procedimiento en el cual no ha sido parte, *Id. citando* a Pennoyer v. Neff, 95 U.S. 714 (1877).

En la actualidad, los factores primordiales y notas diferenciales del análisis de "adecuada representación" se concentran en torno a: (1) la *ausencia de conflicto*, y (2) las garantías de *litigación agresiva* y *vigorosa*. Cuando las reclamaciones o defensas de los representantes no son típicas de las reclamaciones o defensas de la clase, existe un problema inherente de conflicto, ya que no se cumple con el requisito mínimo de intereses adversos que caracteriza nuestro derecho adjudicativo. Cuando no existe el peligro mencionado, el análisis de tramitación vigorosa hace énfasis en las características del abogado de los representantes de la clase. Cuadrado Carrión, supra en la pág. 455.

Como ya hemos indicado, no hemos hallado conflicto en las alegaciones de los demandantes.  En cuanto a la capacidad de su representación legal y el interés que ésta muestra en continuar con el pleito, es necesario señalar lo

siguiente.   Los propios recurridos nos indican que "no cuestionan la preparación académica y experiencia de dichos abogados".[9]   No obstante, han levantado reparos en términos de la estrategia legal seguida por los demandantes y alegan que los abogados únicamente persiguen aumentar sus honorarios a través de un pleito de clase.   Específicamente señalan que los demandantes han "disminuido" su reclamación original de $20,000 a no menos de $300 por cada demandado, de manera que bajo "cualquier esquema de compensación posible en este caso, la única persona que va a salir beneficiada… es la representación legal de la parte peticionaria…".

Sobre lo anterior debemos señalar, en primer lugar, que las diferencias en términos de estrategias legales no pueden suponer un argumento sostenible en contra de la certificación de la clase.   La representación legal de los demandantes en este caso ha demostrado, cuanto menos, agresividad e interés en el pleito, lo cual queda exhibido por la propia presentación del pleito ante este Tribunal Supremo.   Respecto al cambio de cuantía, observamos que en la reclamación original se solicitaba una cuantía fija mientras que en la segunda se aludía a una suma mínima. Esto, de por sí, no evidencia una inadecuada representación de los demandantes.

Acerca de la alegación de los recurridos cuestionando el hecho de que los abogados se beneficiarían del resultado

---

[9] En cuanto a la *competencia* de la representación legal de la parte demandante, se han tomado en cuenta, entre otros factores, la experiencia del abogado en este tipo de casos y la calidad de los escritos y argumentos presentados en las etapas iniciales del caso, si el abogado ha mostrado puntualidad, capacidad y diligencia en el tramite   judicial que abarca desde la presentación de la demanda--o su rápida contestación--el uso de los mecanismos de descubrimiento de prueba y el cumplimiento con las ordenes del tribunal, etc. *Véanse*, Cuadrado Carrión, *supra,* citando a Comment, *The Class Representative: The Problem of the Absent Plaintiffs*, 68 Nw. U.L. Rev. 1133, 1136 (1974). A falta de prueba especifica de lo contrario, la competencia del abogado se *presume. Id.*

del pleito, caben unos breves comentarios. La Ley 118 tuvo el propósito de facilitar los pleitos de este tipo estableciendo, entre otras cosas, una cantidad mínima del 25% de los daños adjudicados en concepto de honorarios de abogados. Ello, evidentemente, con el objetivo de fomentar el que abogados estuvieran dispuestos a comprometer su tiempo y esfuerzo en este tipo de reclamaciones. De otro modo pocos profesionales del derecho estarían dispuestos a invertir su capacidad y tiempo en las reclamaciones exiguas de consumidores individuales.[10]

## IV.

Concluimos que la acción de clase propuesta por los peticionarios cumplió con todos los requisitos dispuestos en la Regla 20 de las de Procedimiento Civil y por tanto con los requisitos de la Ley 118 en cuanto a la identidad de la clase. Es decir, los peticionarios demostraron que en el marco de la clase propuesta las cuestiones comunes predominaron sobre las individuales y la acción de clase constituye un medio superior a otros para atender las presentes reclamaciones. Además del expediente se desprende claramente que la clase propuesta cumple con el criterio de "numerosidad" según definido por la Regla 20. Por último, los requisitos relacionados con la necesidad de defender debidamente los intereses de la clase propuesta (tipicidad y adecuada representación) quedaron demostrados tanto por las alegaciones de las partes, la naturaleza de la

reclamación presentada y las gestiones legales de los peticionarios hasta el presente. Resolvemos entonces que

---

[10] En cualquier caso, debemos recordar lo señalado en Cuadrado Carrión, *supra*, que cualquier acción de clase la sentencia puede estar sujeta a ataque colateral posterior por el fundamento de una inadecuada representación. La pesquisa en torno a la "adecuacidad" puede suscitarse luego del juicio cuando los miembros de la clase traten de prevenir la aplicación de los principios de *res judicata* en un pleito posterior.

el Tribunal de Primera Instancia abusó de su discreción al no certificar la clase propuesta por los peticionarios. Por lo tanto, el Tribunal de Apelaciones erró al confirmar la resolución de instancia.

Por todo lo anterior, se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Guzmán Matías y Rafael
Juarbe de Jesús por sí y en
representación de la clase
comprendida por todas las
personas que se encuentran
en la misma situación, según
se describe en la demanda.
  Demandantes-peticionarios

*Certiorari*

CC-2004-811

v.

Vaquería Tres Monjitas, Inc.
et al.
    Demandados-recurridos

*SENTENCIA*

San Juan, Puerto Rico, a 14 de diciembre de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo